Alex NGIRAINGAS, Oscar Ongklungel, Jimmy Moses, Arthur Mechol, Jonas Ngeheed and Bolandis Ngiraingas, Plaintiffs–Appellants,

v.

Francisco Q. SANCHEZ, individually and as a Police Officer, Joseph R. Cruz, individually and as a Police Officer, Jose T. Terlaje, individually and as a Police Officer, Joe P. Balajadia, individually and as a Police Officer, Elmer F. Sardoma, individually and as a Police Officer, Joseph A. San Nicolas, individually and as a Police Officer, Judith P. Guthertz, in her Official Capacity as Director of the Department of Public Safety (Guam Police Department), the Guam Police Department and the Government of Guam, Defendants–Appellees.

No. 86–2840.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 23, 1988.

Decided June 7, 1988.

Jeffrey R. Siegel, Gill & Siegel, Agana, Guam, for plaintiffs-appellants.

Patrick Mason, Asst. Atty. Gen., Government of Guam, Agana, Guam, for defendants-appellees.

Barbara L. Herwig and Michael E. Robinson, U.S. Dept. of Justice, Washington, D.C., for the amicus.

Before KOZINSKI and THOMPSON, Circuit Judges, and GRAY,* Senior District Judge.

KOZINSKI, Circuit Judge:

We consider whether the district court properly dismissed appellants' federal civil rights claims against the Government of Guam, the Guam Police Department, the Director of the Department of Public Safety, and several Guam police officers acting in their individual and official capacities.

### Facts

On March 31, 1983, appellants were picked up by Guam police on suspicion of having committed certain narcotics offenses. They were taken to police headquarters in Agana where the defendant police officers allegedly "harassed, threatened, intimidated and beat[ ]" them, and forced them to write and sign a statement confessing to the narcotics crimes. Appellants filed several claims alleging numerous constitutional violations and seeking damages under 42 U.S.C. §§ 1981, 1983, 1985 and 1986 (1982). On October 30, 1986, the district court dismissed all of the federal and pendent territorial law claims. *Ngiraingas v. Sanchez*, No. 85–0064 (D.Guam Oct. 30, 1986) ("Mem. Order"). It dismissed the claims against the government of Guam on the ground that Guam was immune from suit under Guam's organic act, 48 U.S.C. § 1421a (1982). Mem. Order at 3–4. The court dismissed the claims against the defendants in their official capacities on the ground that the suit against these officials was, insofar as "the relief sought would affect the public treasury," a suit against the government and thus barred by sovereign immunity. *Id.* at 4–5 (citing *Demery v. Kupperman*, 735 F.2d 1139 (9th Cir.1984), *cert. denied sub nom. Rowland v. Demery*, 469 U.S. 1127, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985)). Finally,

---

* Honorable William P. Gray, Senior United States District Judge, Central District of California, sitting by designation.

it dismissed the claims against the officials in their individual capacities as time-barred. Mem. Order at 5–8.

## Discussion

Appellants raise a number of civil rights claims, principally grounded in 42 U.S.C. § 1983 which, inter alia, proscribes the deprivation of constitutional rights by persons acting under color of territorial law. In addition to denying many of the factual allegations on which appellants' claims rest, the government of Guam denies that it may ever be held liable under section 1983, arguing, first, that it is not a "person" within the meaning of the statute and, second, that Guam is shielded from liability by 48 U.S.C. § 1421a. The individual defendants also claim immunity for actions taken in their official capacities. Several of the individual defendants argue that appellants' claims against them in their individual capacities are barred by the relevant statute of limitations. We consider each of these arguments in turn.

I. Guam's Amenability to Suit Under Section 1983

A. Section 1983 provides:

Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added). The term "person" has long been interpreted to include "legal as well as natural persons." *Monell v. Department of Social Servs.,* 436 U.S. 658, 683, 98 S.Ct. 2018, 2032, 56 L.Ed.2d 611 (1978); *cf. Louisville, C. & C.R.R. v. Letson,* 43 U.S. (2 How.) 497, 558, 11 L.Ed. 353 (1844) ("a corporation created by and doing business in a particular state, is to be deemed for all intents and purposes as a person ..."). But precisely which

legal persons are included within section 1983's scope has been the subject of much disagreement. *See generally* Note, *Developments in the Law—Section 1983 and Federalism,* 90 Harv.L.Rev. 1133, 1191–97 (1977) (describing case law).

*Monell* held that local governments are "persons," reasoning that "there is no justification for excluding municipalities from the 'persons' covered by [section 1983]." 436 U.S. at 701, 98 S.Ct. at 2041. While the Court quoted portions of the legislative history suggesting that the members of the 42d Congress intended to include all "bodies politic" within the definition of person in section 1983, *id.* at 688, 98 S.Ct. at 2034 (quoting Act of Feb. 25, 1871, § 2, 16 Stat. 431), the Court did not reach the question of whether states, territories or other entities are persons under the statute. Accordingly, *Monell* stands only for the narrow proposition that municipalities and other local government units are persons for purposes of section 1983. *See City of St. Louis v. Praprotnik,* —— U.S. ——, 108 S.Ct. 915, 922–23, 99 L.Ed.2d 107 (1988); *City of Oklahoma v. Tuttle,* 471 U.S. 808, 817–18, 105 S.Ct. 2427, 2433–34, 85 L.Ed.2d 791 (1985). The relevant question after *Monell* is not whether an entity is among those bodies politic intended to be included in the Act, for the legislative history is, in that regard, inconclusive, *see* Note, 90 Harv.L.Rev. at 1192 ("the debates involved no explicit discussion of the definition of the word 'person'"), but rather whether "there is ... justification for excluding [the entity] from the 'persons' covered by [section 1983]." 436 U.S. at 701, 98 S.Ct. at 2041. With this in mind, we turn our attention to Guam.

B. Guam is an unincorporated territory whose status is governed by the Organic Act of Guam (1950), 48 U.S.C.A. §§ 1421–1428e (1987). It "enjoy[s] only such powers as may be delegated to it by Congress in the Organic Act...." *Sakamoto v. Duty Free Shoppers, Ltd.,* 764 F.2d 1285, 1286 (9th Cir.1985), *cert. denied,* 475 U.S. 1081, 106 S.Ct. 1457, 89 L.Ed.2d 715 (1986); *see also* Leibowitz, *The Applicability of Federal Law to Guam,* 16 Va.J.

Int'l L. 21, 34 (1975) ("Guam has no power to act in the absence of a specific authorization from Congress"). As such, it "is in essence an instrumentality of the federal government," *id.*, much like a federal department or administrative agency. *See United States v. Wheeler*, 435 U.S. 313, 320–21, 98 S.Ct. 1079, 1084–85, 55 L.Ed.2d 303 (1978). Like an agency, it may administer its own affairs; it may draft laws of general applicability, select personnel, exact penalties and even create an entire infrastructure of government. But, also like an agency, its authority to administer itself and to set policy is derived from, and circumscribed by, Congress.

Admittedly, the analogy between Guam and an administrative agency such as the Federal Trade Commission is counterintuitive. Guam seems more like a state or a municipality than a run-of-the-mill federal agency. After all, Guam elects government officials, its citizens participate politically and the territory enjoys many of the trappings of a sovereign governmental entity. *See* 48 U.S.C. §§ 1421–1428e. But there are also very significant differences, differences we deem conclusive for purposes of the question presented to us. Guam marches squarely to the beat of the federal drummer; the federal government bestows on Guam its powers and, unlike the states, which retain their sovereignty by virtue of the Constitution, Guam's sovereignty is entirely a creation of federal statute.

In *Sakamoto*, we considered whether Guam enjoys the same immunity from the antitrust laws as does the federal government. Reasoning that "the government of Guam is an instrumentality of the federal government over which the federal government exercises plenary control" we concluded that "[t]here is no reason why Guam should enjoy less immunity than the federal government itself." 764 F.2d at 1289. While the issue in *Sakamoto* was immunity from antitrust suit, the principle —that Guam, like the federal government, should not be held liable on the same terms as other entities—is applicable in this context as well.

As a creature of the federal government, Guam stands in sharp contrast to "bodies politic" as that phrase is normally understood. *See* Leibowitz, 16 Va.J.Int'l L. at 35 ("the government of Guam totally lacks the degree of local autonomy possessed by states or commonwealths within the federal system"). Unlike states, Guam has no sovereign status; it cannot create a system of laws and administration except by leave of Congress and, of course, the Constitution does not accord Guam or any other unincorporated territories independent sovereignty. *See, e.g.,* 48 U.S.C. § 1423i (Congress may annul any act of Guam legislature); *compare* U.S. Const. amends. X–XI *with id.* at art. IV, § 3. It is also not like a trust territory whose relationship with the United States government is as a commonwealth or a "free associate," administered by the United States pursuant a trusteeship agreement or covenant.[1]

---

1. Guam's relationship with the United States government distinguishes this case from *Fleming v. Department of Public Safety*, 837 F.2d 401 (9th Cir.1988), where we held that the Commonwealth of the Northern Mariana Islands (CNMI) is a person for the purposes of section 1983. *Id.* at 406. CNMI has a unique relationship with the United States; the original Trusteeship Agreement obligated the United States to "promote the development of the inhabitants of the trust territory toward self-government or independence;" *see* Trusteeship Agreement for the Former Japanese Mandated Islands, July 18, 1947, art. 6, § 1, 61 Stat. 3301, T.I.A.S. No. 1665, 8 U.N.T.S. 189, *quoted in Fleming*, at 403. Significantly, "the United States does not possess sovereignty over the Trust Territory" but merely "exercises powers of administration, legislation, and jurisdiction ... pursuant to an agreement with the United Nations." *United States v. Covington*, 783 F.2d 1052, 1055 (9th Cir.1985), *cert. denied,* — U.S. —, 107 S.Ct. 117, 93 L.Ed.2d 64 (1986); *Commonwealth of Northern Mariana Islands v. Atalig*, 723 F.2d 682, 684 (9th Cir.), *cert. denied,* 467 U.S. 1244, 104 S.Ct. 3518, 82 L.Ed.2d 826 (1984). Guam's relation to the United States is entirely different. Guam has no separate sovereign status; unlike CNMI, it "is subject to the plenary power of Congress and has no inherent right to govern itself." *Atalig,* 723 F.2d at 687; *see also* Leibowitz, 16 Va.J.Int'l L. at 62–63 ("authority of the Guam government depends entirely upon the will of Congress, and is at all times subject to such alterations as Congress may see fit to adopt"); *cf. Barusch v. Calvo,* 685 F.2d 1199, 1202 (9th Cir.1982) (distinguishing CNMI from Guam with respect to border searches).

Because we are bound by *Sakamoto*'s instruction that Guam is "a creation of Congress" and no more than "an instrumentality of the federal government," 764 F.2d 1286, we conclude that Guam, like the federal government, is not a "person" chargeable with violating territorial law under section 1983.[2]

The same goes for the Guam Police Department, also a named defendant in this action. The police department is an instrumentality of the territory, deriving its powers from the Guam government and acting as its official law enforcement agency. Consequently, the Guam Police Department, like the government it serves, is not a person for section 1983 purposes.

## II. Immunity

The district court dismissed the claims against the Government of Guam and against the individual defendants acting in their official capacities on the ground that the government and its officials are immune from suit under section 1983. Mem. Order at 3. Because we hold that Guam is not a person within the meaning of section 1983, we affirm the district court's dismissal of the claims against the territory, but do so without reaching the question of its putative immunity under section 1421a of Guam's Organic Act. We still must consider, however, whether the individual defendants enjoy immunity from suit, first as government officials and then as private individuals.

A. We held above that the government of Guam is in all respects an instrumentality of the federal government and therefore not a person for the purposes of section 1983. For the same reasons, we hold that the individual defendants acting in their official capacities are not amenable to suit under section 1983.

■ Traditionally, officials have been liable or immune for acts committed in their official capacities to the same extent as has the governments they serve. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101–02, 104 S.Ct. 900, 908–09, 79 L.Ed.2d 67 (1984); *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963). The Court in *Monell* explained that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent" 436 U.S. at 690 n. 55, 98 S.Ct. at 2035 n. 55. Consequently, the Court has long held that a suit where the relief sought would affect the public treasury and public administration, is deemed to be a suit against the government itself. *See Pennhurst*, 465 U.S. at 101 & n. 11, 104 S.Ct. at 908 & n. 11; *Dugan*, 372 U.S. at 620, 83 S.Ct. at 1006.

■ Appellants' claims against Guam and the individual defendants in their official capacities are based principally on their allegation that the seven police officers acted pursuant to a "de facto policy" directed toward "summarily punish[ing] persons, including Plaintiffs, who refuse to obey orders, whether lawful or not, by means of excessive use of force, harassment, intimidation, violence and denial of basic civil and constitutional rights." Third Amended Complaint at ¶ 53.[3] Finding Guam's officials immune from suit, the district court did not reach the issue of whether such a de facto policy exists and, if so, whether it gives rise to a section 1983 claim. Because we hold that Guam is not a person under section 1983, any claim that it authorized

*Fleming* does not state that Guam is a person or that *Bunyan v. Camacho*, 770 F.2d 773 (9th Cir.1985), *cert. denied*, 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986), stands for that proposition. It says only that section 1983 is applicable in Guam, as well as in the several states. *See* 404 n. 2. In its later discussion holding that the CNMI is a person, Guam is not mentioned.

2. Because we hold that Guam is not a "person" under section 1983, we need not consider whether Guam enjoys sovereign immunity pur-

suant to the eleventh amendment. *See Fleming*, at 405–406 & n. 5.

3. We note that the Supreme Court has recently expressed skepticism about the type of "de facto policy" claim raised here, suggesting that "ad hoc searches for officials possessing such 'de facto' authority would serve primarily to foster needless unpredictability in the application of § 1983." *City of St. Louis v. Praprotnik*, —— U.S. ——, 108 S.Ct. 915, 928, 99 L.Ed.2d 107 (1988).

this egregious conduct as a matter of official policy would not be actionable. To the extent that Guam is not subject to suit under section 1983, neither are its officials acting under its tacit instruction.

B. Having held that the claims against the government of Guam and against the individual defendants acting in their official capacities were properly dismissed, we now turn to the claims against the police officers in their individual capacities.[4] Such a suit can be maintained unless the officers are immune. We consider two possible sources of immunity: section 1421a of Guam's organic act of 1950, and general principles of immunity applicable to certain conduct of government officials.

1. Section 1421a provides that "[the] government of Guam ... may be sued upon any contract entered into with respect to, or any tort committed incident to, the exercise by the government of Guam of any of its lawful powers." Appellees argue that, because the government has consented to suit in only a few narrow circumstances, it cannot be deemed to have consented to suit under section 1983.

■ Section 1421a does not apply, however, to suits against individual government officials; it applies only to suits against "the government of Guam" and, perhaps, suits against individual government agents acting in their official capacities. Cf. Guam Gov't Code § 6500.02(1) (1983) (" 'Government of Guam' shall include all agencies, departments, instrumentalities, public corporations, and all other entities of the Government"). Appellees suggest that "government of Guam" must include employees of that government as well. This does not follow at all; reading section 1421a to exclude section 1983 suits against individual employees makes perfect sense. Section 1983 embodies the notion that individuals acting under state or territorial law who violate the federal rights of others are acting without the imprimatur of the government. As we explained in Demery v. Kupperman, 735 F.2d at 1146:

Section 1983 ... confers on [plaintiff] a cause of action at law against "[e]very person" who, under color of state law, subjects him to "the deprivation of any rights, privileges, or immunities secured [him] by the Constitution and laws." 42 U.S.C. § 1983 (1976). As the Supreme Court has emphasized, a state official who violates federal law "is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." Scheuer v. Rhodes, 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974) (quoting Ex Parte Young, 209 U.S. 123, 160, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908)). Accordingly, the Court has distinguished section 1983 claims from claims "seeking damages from the public treasury," Scheuer, 416 U.S. at 238, 94 S.Ct. at 1687.

See also Spruytte v. Walters, 753 F.2d 498, 511–14 (6th Cir.1985), cert. denied, 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 767 (1986).

■ The Third Circuit construed a similar immunity provision in Ocasio v. Bryan, 374 F.2d 11 (3d Cir.1967). Ocasio involved a civil rights suit against three Virgin Islands police officers. Defendants claimed sovereign immunity based on the Revised Organic Act of the Virgin Islands which, in language quite similar to section 1421a, provides:

The government of the Virgin Islands ... shall have the right to sue by such name and in cases arising out of contract, to be sued: Provided, That no tort action shall be brought against the government of the Virgin Islands or against any officer or employee thereof in his official capacity without the consent of the legislature....

48 U.S.C. § 1541(b) (1982). The court held that this immunity provision "does not extend to a police officer who is sued for damages under the Civil Rights Act [for] in such cases recovery runs against him in his private capacity and not against the Government." 374 F.2d at 13. Similarly, we hold that section 1421a is inapplicable to

---

**4.** One other individual defendant, Judith P. Guthertz, was sued only "in her official capacity as ... Director of the Department of Public Safety." Third Amended Complaint at ¶ 14.

this section 1983 suit against Guam's police officers in their individual capacities.

2. While section 1983 "creates a species of tort liability that on its face admits of no immunities," *Imbler v. Pachtman,* 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976), the statute's broad sweep has been narrowed by realistic applications of immunities "well grounded in history and reason." *Tenney v. Brandhove,* 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951). In essence, the Supreme Court has instructed us that section 1983 "is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them." *Imbler,* 424 U.S. at 418, 96 S.Ct. at 989; *see Malley v. Briggs,* 475 U.S. 335, 339–40, 106 S.Ct. 1092, 1095–96, 89 L.Ed.2d 271 (1986).

■ It is well settled that police officers are entitled to qualified immunity from section 1983 suits. *See, e.g., id.* at 340–41, 106 S.Ct. at 1095–96; *Pierson v. Ray,* 386 U.S. 547, 555–57, 87 S.Ct. 1213, 1218–19, 18 L.Ed.2d 288 (1967); *Hamblen v. County of Los Angeles,* 803 F.2d 462, 465 (9th Cir. 1986); *Hutchinson v. Grant,* 796 F.2d 288, 290 (9th Cir.1986). The principal case in the area is *Pierson,* where the Court considered a section 1983 claim brought against three Mississippi police officers on charges of false arrest and imprisonment. The Court held that "the defense of good faith and probable cause ... available to the officers in the common-law action for false arrest and imprisonment, is also available to them in the action under § 1983." *Id.* 386 U.S. at 557, 87 S.Ct. at 1219.[5]

The Court has warned against putting an officer of the law into a position where "he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does." *Pierson,* 386 U.S. at 555, 87 S.Ct. at 1218. Accordingly, police officers "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *accord Malley,* 475 U.S. at 340, 106 S.Ct. at 1095. On the other hand, police officers must not be given an impenetrable shield against the only weapon aggrieved plaintiffs have to vindicate the deprivation of their constitutional rights. *See id.* ("[t]he common law has never granted police officers an absolute and unqualified immunity"). Immunity remains the exception, not the rule. *See, e.g., id.* at 340, 106 S.Ct. at 1095 ("we do not assume that Congress intended to incorporate every common-law immunity into § 1983 in unaltered form"); *Butz v. Economou,* 438 U.S. 478, 506, 98 S.Ct. 2894, 2910, 57 L.Ed.2d 895 (1978) (officers who claim immunity "must bear the burden of showing that public policy requires an exemption" from liability).

Deciding whether a police officer has acted in good faith is no easy task. As a general matter, however, we note that good faith immunity is judged "by an objective standard, not by examination of the subjective state of mind of the officer." *Hutchinson,* 796 F.2d at 290 (citing *Harlow,* 457 U.S. at 817–18, 102 S.Ct. at 2737–38). The relevant question is the one framed by the Third Circuit in *Deary v. Three Un–Named Police Officers,* 746 F.2d 185, 192 (3d Cir.1984) (Virgin Islands): "[W]ould or should a reasonable person in the shoes of the individual police officer have known that he was violating another's ... clearly established constitutional rights ...."?

■ This case is before us on a grant of summary judgment. The district court ruled in favor of defendants on the basis of section 1421a; consequently, the court never considered whether and to what extent the officers might enjoy good faith immunity from suit. Moreover, we have no basis to decide, on the record before us, whether the officers here are entitled to good-faith immunity. Accordingly, we direct the dis-

---

**5.** While *Pierson* involved a false arrest, we have held that a qualified immunity defense is also available where defendant is charged with il-

legal use of excessive force. *Peraza v. Delameter,* 722 F.2d 1455, 1457 (9th Cir.1984); *see Hamblen,* 803 F.2d at 465.

trict court, on remand, to consider and resolve defendants' good faith immunity claims.

## III. Statute of Limitations

The events giving rise to plaintiffs' claims allegedly occurred on March 31, 1983. Plaintiffs promptly sought administrative relief under Guam's tort claims act. The claims were denied on March 16, 1985, and plaintiffs filed suit in district court six months later, approximately two and a half years after the incident. Under Guam Civ. Proc.Code § 339 (1980), plaintiff must file any "action for assault, battery, false imprisonment ... or for injury to, or for the death of, a person caused by the wrongful act or neglect of another" within two years from the time that the cause of action accrued. The district court held that plaintiffs' claims against the individual defendants acting in their individual capacity were barred by the two-year statute of limitations applicable to tort claims brought under section 1983. Mem. Order at 7. We disagree.

There is no federal statute of limitations applicable to section 1983 claims; therefore, we look to the most relevant state statute of limitations to determine whether the section 1983 claims were timely filed. 42 U.S.C. § 1988 (1982); *Wilson v. Garcia*, 471 U.S. 261, 266–68, 105 S.Ct. 1938, 1941–43, 85 L.Ed.2d 254 (1985); *Board of Regents v. Tomanio*, 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980); *De Luna v. Farris*, 841 F.2d 312, 314 (9th Cir.1988); *Usher v. City of Los Angeles*, 828 F.2d 556, 558 (9th Cir.1987). In *Wilson*, the Supreme Court cleared up the confusion surrounding which limitations periods apply to section 1983 claims, holding that the limitations period governing "tort action[s] for the recovery of damages for personal injuries is the best alternative available." 471 U.S. at 276, 105 S.Ct. at 1947.

The incidents giving rise to the cause of action are alleged to have occurred more than two years before *Wilson*. The suit was not filed, however, until some five months after *Wilson*. Relying on *Wilson* and *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971), we have held that the applicable statute of limitations "shall be either (1) the pre-*Wilson* period, commencing at the time the cause of action arises, or (2) the post-*Wilson* period, commencing with the *Wilson* decision, whichever expires first." *Usher*, 828 F.2d at 561. The question, then, is what was the applicable limitations period in Guam before *Wilson*? If it was the two-year, personal injury statute of Guam Civ.Proc.Code 339, then plaintiffs' claims are barred; applying any of the other possible limitations periods, however, would render plaintiffs' claims timely.

Before *Wilson*, we had consistently held that the three-year limitations period for "[a]n action upon a liability created by statute," governs section 1983 suits. *Mason v. Schaub*, 564 F.2d 308, 309 (9th Cir. 1977) (Nevada); *Strung v. Anderson*, 452 F.2d 632, 632–33 (9th Cir.1971) (Montana); *Smith v. Cremins*, 308 F.2d 187, 189–90 (9th Cir.1962) (California). While no case has considered the applicable limitations period in cases involving Guam, the rationale of these pre-*Wilson* cases applies comfortably to this unincorporated territory. Guam Civ.Proc.Code 338 (1970) provides that "[a]n action upon a liability created by law other than a penalty or forfeiture" must be filed within three years. Other than substituting "statute" for "law," California's three-year statute, Cal.Civ.Proc.Code § 338 (West 1982), is exactly the same. We hold that Guam's three-year period for actions "upon a liability created by law" applied to section 1983 claims before *Wilson* and therefore applies to these claims. Accordingly, we hold that the plaintiffs' complaint was timely, having been filed within the three-year period allowed by Guam Civ. Proc.Code 338.

## IV. Pendent Territorial Law Claims

Having dismissed the federal claims, the district court also dismissed the pendent territorial law claims on the ground that

**380**

"[a]bsent an independent basis of federal subject matter jurisdiction may not be exercised over pendent claims." Mem.Order at 10. With respect to those defendants as to whom we reinstate certain of the federal claims, we reverse the district court's dismissal of the pendent claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966). As to the remaining defendants, the district court has discretion whether or not to dismiss the pendent claims. *Id.* at 726–27, 86 S.Ct. at 1139–40. While the district court exercised its discretion to dismiss the claims on the assumption that the entire case would be dismissed, it might well decide the matter differently knowing that it will be retaining jurisdiction over the other defendants. On remand, the district court shall again exercise its discretion.

### Conclusion

We affirm the district court's dismissal of the claims against the government of Guam on the ground that Guam is not a person within the meaning of 42 U.S.C. § 1983. For the same reasons, we affirm the district court's dismissal of the claims against the Guam Police Department. We affirm the district court's dismissal of the claims against the individual defendants in their official capacities but reverse as to the claims against the police officers in their individual capacities. On remand, the district court shall consider whether and to what extent the individual officers enjoy good faith immunity from suit. We also hold that plaintiffs' claims against the individual police officers are not barred by the statute of limitations. Finally, we reverse the district court's dismissal of the pendent territorial law claims.

AFFIRMED in part, REVERSED in part and REMANDED to the district court for partial reinstatement of the complaint and for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.