**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

GARY RAMSEY,

*Plaintiff-Appellee*,

v.

ESTHER L. MUNA, individually and in her official capacity as CEO of the Commonwealth Healthcare Corporation; JEANOLIVIA GRANT, individually and in her official capacity as Chief of the OB/GYN Department, Commonwealth Healthcare Corporation; SHERLEEN OSMAN, individually and in her official capacity as Director of Medical Affairs, Commonwealth Healthcare Corporation; JOSEPH KEVIN VILLAGOMEZ; COMMONWEALTH HEALTHCARE CORPORATION; COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS,

*Defendants-Appellants*,

and

DOES 1–10,

*Defendants.*

No. 15-16309

D.C. No.
1:14-cv-00021

OPINION

Appeal from the United States District Court
for the District of the Northern Mariana Islands
Heather L. Kennedy, Magistrate Judge, Presiding

Argued and Submitted October 18, 2016
Honolulu, Hawaii

Filed February 28, 2017

Before:  J. Clifford Wallace, Jerome Farris,
and Paul J. Watford,  Circuit Judges.

Opinion by Judge Watford

## SUMMARY[*]

### Sovereign Immunity

In an interlocutory appeal, the panel reversed the district court's denial of a motion to dismiss, on the basis of sovereign immunity, an action against the Commonwealth of the Northern Mariana Islands and one of its agencies brought by a doctor, who used to work at the public hospital on Saipan, and who alleged that the Commonwealth and the public corporation that runs the hospital wrongfully denied him hospital privileges.

Plaintiff asserted contract and tort claims under Commonwealth law; his claims under federal law were

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

dismissed on grounds not at issue in this appeal. The panel held that Commonwealth retained its sovereign immunity with respect to claims arising under Commonwealth law. The panel held that *Fleming v. Department of Public Safety*, 837 F.2d 401 (9th Cir. 1988), did not control the outcome of this case because *Fleming* held only that the Commonwealth waived its sovereign immunity with respect to "suits in federal court arising under federal law." The panel held that the Commonwealth could not be sued without its consent on claims arising under its own laws. On remand, the panel directed the district court to grant the Commonwealth's motion to dismiss the claims at issue in this appeal.

## COUNSEL

James M. Zarones (argued), Chief Solicitor Division, Office of the Attorney General, Saipan, Commonwealth of the Northern Mariana Islands, for Defendants-Appellants.

Stephen C. Woodruff (argued), Saipan, Commonwealth of the Northern Mariana Islands, for Plaintiff-Appellee.

## OPINION

WATFORD, Circuit Judge:

This is an action against the Commonwealth of the Northern Mariana Islands and one of its agencies, brought by a doctor who used to work at the public hospital on Saipan. (The case also involves claims against certain individual defendants, but those claims are not before us.) The plaintiff alleges that the Commonwealth and the public corporation

that runs the hospital wrongfully denied him privileges at the hospital. As relevant here, he asserts contract and tort claims under Commonwealth law; his claims under federal law were dismissed on grounds not at issue in this appeal. The defendants moved to dismiss the contract and tort claims on the basis of sovereign immunity. The district court reluctantly denied the motion, believing itself bound by our decision in *Fleming v. Department of Public Safety*, 837 F.2d 401 (9th Cir. 1988). We have jurisdiction to hear the Commonwealth's interlocutory appeal challenging the denial of sovereign immunity. *See Del Campo v. Kennedy*, 517 F.3d 1070, 1074 (9th Cir. 2008).

In *Fleming*, we held that the Commonwealth does not enjoy sovereign immunity in federal court with respect to claims brought under federal law. 837 F.2d at 407–08. We reached that conclusion after examining the foundational document that created the Commonwealth, known as the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America. *See* 48 U.S.C. § 1801 (setting out the text of the Covenant). Although the Covenant does not explicitly address sovereign immunity, we concluded that a waiver of immunity could be inferred from one of its provisions, § 501(a). That section states: "To the extent that they are not applicable of their own force, the following provisions of the Constitution of the United States will be applicable within the Northern Mariana Islands as if the Northern Mariana Islands were one of the several States . . . ." Section 501(a) then lists roughly two dozen provisions of the United States Constitution. Absent from that list is the Eleventh Amendment, which recognizes States' immunity from private suits in federal court. *See Hans v. Louisiana*, 134 U.S. 1, 15 (1890). We held that the omission of the Eleventh

Amendment signaled an intention to waive the Commonwealth's sovereign immunity in federal court with respect to claims arising under federal law. *Fleming*, 837 F.2d at 407.

We found confirmation of this implied waiver in the *Section by Section Analysis of the Covenant to Establish a Commonwealth of the Northern Mariana Islands* (1975), an authoritative source of the Covenant's legislative history prepared by the Marianas Political Status Commission. *Id.* at 408. The *Section by Section Analysis* states that the Covenant provides the people of the Northern Mariana Islands with the right to local self-government under a constitution of their own making, thereby ensuring that the "Northern Mariana Islands government will be an independent government, like that of the states." *Section by Section Analysis*, p. 11. As a consequence, "the Government of the Northern Mariana Islands will have sovereign immunity, so that it cannot be sued *on the basis of its own laws* without its consent." *Id.* (emphasis added). We concluded that this reference to sovereign immunity, limited to claims arising under the Commonwealth's own laws, supplied "persuasive evidence" that the drafters of the Covenant intended to waive the Commonwealth's sovereign immunity with respect to claims arising under federal law. *Fleming*, 837 F.2d at 408.

We hold that *Fleming* does not control the outcome in this case. *Fleming* held only that the Commonwealth waived its sovereign immunity with respect to "suits in federal court arising under federal law." *Id.* at 407. The court did not have occasion to say whether the Commonwealth also waived its sovereign immunity with respect to claims arising under Commonwealth law, for no such claims were at issue there. What the court suggested on that subject, based on the

statement in the *Section by Section Analysis* quoted above, is that the Commonwealth did *not* waive its immunity from suit with respect to claims arising under its own laws.

Confronting the waiver issue as a matter of first impression, we agree with the suggestion in *Fleming* that the Commonwealth retained its sovereign immunity with respect to claims arising under Commonwealth law. That conclusion is dictated by two lines of Supreme Court precedent.

In the first line, the Supreme Court held that Puerto Rico and Hawaii, both United States territories at the time, enjoyed sovereign immunity from suits arising under their own laws. *People of Porto Rico v. Rosaly y Castillo*, 227 U.S. 270, 273–74 (1913); *Kawananakoa v. Polyblank*, 205 U.S. 349, 353 (1907). The Court held that each territory had been granted the power to enact its own laws and thus enjoyed a level of autonomy similar to that of the States. Sovereign immunity barred suits arising under their own laws because, absent consent, "there can be no legal right against the authority that makes the law on which the right depends." *Kawananakoa*, 205 U.S. at 353.

The same rule applies with equal force to the Commonwealth. Like territorial Hawaii and Puerto Rico, the Commonwealth has the power to enact its own laws and indeed enjoys an even greater level of legislative autonomy than Hawaii and Puerto Rico did back then. Puerto Rico's Organic Act provided that the federal government could unilaterally annul any laws the territory enacted. Foraker Act, ch. 191, § 31, 31 Stat. 77, 83 (1900). Hawaii's Organic Act authorized Congress to repeal or amend any of the laws that remained in force from the territory's time as an independent republic, and granted the territory's governor, an

appointee of the federal government, the right to veto bills passed by the local legislature. Act of Apr. 30, 1900, ch. 339, §§ 6, 49, 66, 31 Stat. 141, 142, 149, 153. The Commonwealth's government, by contrast, was established by the Covenant and its own constitution, not by an Organic Act passed by Congress, and the federal government does not possess a similar veto authority with respect to laws enacted by the Commonwealth's legislature. *See* Covenant §§ 105, 203. Thus, if Hawaii and Puerto Rico enjoyed sovereign immunity with respect to claims brought under their own laws, it is even clearer that the Commonwealth enjoys sovereign immunity with respect to claims arising under its own laws.

In the second line of precedent, the Supreme Court has held, perhaps at odds with our reasoning in *Fleming*, that a waiver of a State's sovereign immunity must be unequivocal. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99 (1984). That means a waiver will be found "only where stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (internal quotation marks omitted).

The Covenant does not expressly waive the Commonwealth's immunity from suits arising under its own laws, and we do not think the mere omission of the Eleventh Amendment from § 501(a) gives rise to "overwhelming implications" that such a waiver was intended. Indeed, as the court stated in *Fleming*, all evidence points in the opposite direction. Most significantly, the *Section by Section Analysis* indicates that the drafters of the Covenant believed the Commonwealth would be entitled to sovereign immunity

when sued on the basis of its own laws.  The drafters likely viewed inclusion of the Eleventh Amendment in § 501(a) as unnecessary to secure such immunity, given the long line of authority holding that a State's immunity from private suits is an inherent aspect of sovereignty, not a principle derived solely from the Eleventh Amendment.  *Principality of Monaco v. Mississippi*, 292 U.S. 313, 322–23 (1934); *Hans*, 134 U.S. at 12–13; *see also Alden v. Maine*, 527 U.S. 706, 713 (1999).   In addition, as noted above, the Covenant created a commonwealth with at least as much sovereign autonomy as territorial Hawaii and Puerto Rico, both of which enjoyed sovereign immunity by virtue of the fact that they possessed the power to enact their own laws.  In the face of this equally reasonable explanation for the Eleventh Amendment's omission from § 501(a), we cannot construe that omission as effecting a waiver of the Commonwealth's immunity from suits arising under its own laws.

Although the Covenant itself does not contain an express waiver of sovereign immunity, the Commonwealth has enacted a statute that waives its immunity with respect to a limited set of claims arising under Commonwealth law. However, that statute provides that the Commonwealth's own courts "shall have exclusive original jurisdiction" to hear such claims.  7 C.M.C. § 2251.  The Supreme Court has held that a provision of this sort does not suffice to waive a State's immunity from suit in federal court.  Instead, the statute or constitutional provision purporting to waive sovereign immunity must "specifically indicate the State's willingness to be sued in federal court."  *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241 (1985).  Section 2251 indicates precisely the opposite—that the Commonwealth is willing to be sued in certain circumstances, but *not* in federal court.

In short, we hold that the Commonwealth may not be sued without its consent on claims arising under its own laws. On remand, the district court is directed to grant the Commonwealth's motion to dismiss the claims at issue in this appeal.

**REVERSED and REMANDED.**