## CRAIN et al. v. GOVERNMENT OF GUAM.
### No. 13025.

United States Court of Appeals
Ninth Circuit.

March 21, 1952.

Crain & Phelan, Agana, Guam (Schofield, Hanson & Jenkins, San Francisco, Cal., Associate Counsel), for appellants.

Russell L. Stevens, Atty. General of Guam, Agana, Guam, for Knight G. Aulsbrook.

Thomas E. Haven, San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, and BONE and POPE, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from a judgment dismissing an action by appellants Crain and Phelan against the Government of Guam, the sole defendant, for a declaratory judgment of their rights, and those of other Guamanians similarly situated, under Section 31 of the Organic Act of Guam, 48 U.S.C.A. § 1421i, providing that: "The income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in Guam."

The district court's grounds for the dismissal are that Guam has sovereign immunity from such a suit against it which immunity it has not waived and that the suit is with respect to federal taxes and thus expressly barred by the Declaratory Judgments Act, 28 U.S.C. § 2201.

Appellants' complaint alleges that the government of Guam has asserted "the right to collect an income tax" and has published notices and claims with respect to alleged income tax procedures and payments due to the government of Guam. The complaint sought a declaration that, among other things, the statute means: (1) That the income tax laws of the United States are not repealed or suspended by the provisions of the Organic Act of Guam; and (2) That Section 31 of the Organic Act of Guam, 48 U.S.C.A. § 1421i, does not create a territorial income tax. It prayed that the government of Guam, its officers, agents and servants, be restrained from attempting to collect such a territorial income tax.

Since we agree that Guam has sovereign immunity from such a suit as this one, which it has not waived, we cannot consider the other contentions of appellants. At the hearing we were advised that litigation is now pending in Guam, brought against a Guamanian tax collector, with the United States joined as intervenor-defendant, involving such other questions.

The nature of the Guamanian government is established by the Organic Act of Guam, 64 Stat. 384 et seq., 48 U.S.C.A. § 1421 et seq. Section 3 of the Act provides that:

"Unincorporated territory; capital; powers of government; type of government; supervision

"Guam is declared to be an unincorporated territory of the United States and the capital and seat of government thereof shall be located at the city of Agana, Guam. The government of Guam shall have the powers set forth in this chapter and shall have power to sue by such name. The government of Guam shall consist of three branches, executive, legislative, and judicial, and its relations with the Federal Government shall be under the general administrative supervision of the head of such civilian department or agency of the Government of the United States as the President may direct."

Of this section the Senate Report on the Organic Act states: "Section 3 of the bill sets forth in specific language that Guam is declared by the act to be 'an unincorporated territory.' Thus it has the same legal status as Puerto Rico and the Virgin Islands, and is not similar to that of Alaska and Hawaii." Senate Report 2109, 81st Cong., 2d Sess. This identity of Guam with Puerto Rico is apparent from the similarities in governmental structure of the two territories.

The head of the Executive Branch of the government of Guam is provided for in Section 6 of its Organic Act: "The executive authority of the government of Guam shall be vested in an executive officer, whose title shall be 'Governor of Guam', * * ".[1]

The Legislative Branch of the government of Guam is provided for in Section 10:

"The legislative power of Guam, except as otherwise provided in this chapter, shall be vested in a legislature which shall consist of a single house of not to exceed twenty-one members to be elected at large. General elections to the legislature shall be held on the Tuesday next after the first Monday in November, biennially in even-numbered years. * * *"

"The legislative power of Guam shall extend to all subjects of legislation of local application not inconsistent with the provi-

[1]. The Puerto Rico organic act, § 17, 31 Stat. 81, 48 U.S.C.A. § 771, is substantially the same.

sions of this chapter and the laws of the United States applicable to Guam." § 11.[2]

Lastly, a Judicial Branch for the Guamanian government is provided for in Section 22: "(a) There is created a court of record to be designated the 'District Court of Guam', and the judicial authority of Guam shall be vested in the District Court of Guam and in such court or courts as may have been or may hereafter be established by the laws of Guam. The District Court of Guam shall have, in all causes arising under the laws of the United States, the jurisdiction of a district court of the United States as such court is defined in section 451 of Title 28, and shall have original jurisdiction in all other causes in Guam, jurisdiction over which has not been transferred by the legislature to other court or courts established by it, and shall have such appellate jurisdiction as the legislature may determine." [3]

Conceivably then, the district court expressly established could have a complete original jurisdiction in all causes cognizable in a court of law, to the same extent as in courts of the states of the United States.

Is such an aggregation of governmental powers as set out above possessed with the immunity from suit without consent? The classic statement of the doctrine for non-contiguous territories of the United States, those where the probabilities of statehood are less than were those of the North American territories and where the people were largely not immigrants from the United States, is found in Kawananakoa v. Polyblank, 205 U.S. 349, 27 S.Ct. 526, 527, 51 L.Ed. 834, which held that Hawaii had sovereign immunity:

"Some doubts have been expressed as to the source of the immunity of a sovereign power from suit without its own permission, but the answer has been public property since before the days of Hobbes. Leviathan, chap. 26, 2. A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends. 'Car on peut bien recevoir loy d'autruy, mais il est impossible par nature de se donner loy.' Bodin, Republique, 1, chap. 8, ed. 1629, p. 132; Sir John Eliot, De Jure Maiestatis, chap. 3. Nemo suo statuto ligatur necessitative. Baldus, De Leg. et Const. Digna Vox, 2 ed. 1496, fol. 51b, ed. 1539, fol. 61.

"As the ground is thus logical and practical, the doctrine is not confined to powers that are sovereign in the full sense of juridical theory, but naturally is extended to those that, in actual administration, originate and change at their will the law of contract and property, from which persons within the jurisdiction derive their rights."

Our present case meets this test, witness the power given to the legislature, supra, unless it makes some difference that Guam is an unincorporated territory, while Hawaii was incorporated, or that Guam must report its legislative acts through its Governor to the Secretary of Interior who in turn reports to the Congress of the United States which has the option of nullifying the Guamanian legislation within a certain time.

Similar difficulties were not thought insurmountable when the Supreme Court in People of Porto Rico v. Rosaly y Castillo, 227 U.S. 270, 33 S.Ct. 352, 57 L.Ed. 507, decided that Puerto Rico had sovereign immunity. That territory is also unincorporated.[4] Furthermore, the Foraker Act, 31 Stat. 77, established a similar kind of supervisory control by the Congress over legislation of Puerto Rico as was provided later over legislation of Guam.

"* * * That all laws enacted by the legislative assembly shall be reported to the Congress of the United States, which hereby reserves the power and authority, if deemed advisable, to annul the same." § 31.

"* * * [The Governor] shall annually, and at such other times as he may be re-

---

2. The Puerto Rico organic act, § 32, 31 Stat. 83, is substantially the same.

3. The Puerto Rico organic act, § 34, 31 Stat. 84, is substantially the same, ex-

cept that other territorial courts are expressly established by § 33, 31 Stat. 84.

4. New York ex rel. Kopel v. Bingham, 211 U.S. 468, 29 S.Ct. 190, 53 L.Ed. 286.

quired, make official report of the transactions of the government in Porto Rico, through the Secretary of State, to the President of the United States: *Provided, That the President may, in his discretion, delegate and assign to him such executive duties and functions as may in pursuance with law be so delegated and assigned." § 17.

The Puerto Rico case puts great stress upon the fact that, though the Puerto Rican government was clearly subordinate to the sovereignty of the United States, its pattern of government with three separate branches of government was similar to that of Hawaii and that it had a large measure of local autonomy. We have the same picture here, as demonstrated above; and Congress has declared that the two territories have the same legal status.

It is true that Guam is subordinate to the United States and that not all rights of Guamanians flow from their local legislation since the Organic Act, a product of Congress, is the source of much of their private right by imposing limitations on local government. But a similar situation was no bar to the application of sovereign immunity in the Kawananakoa case where the Court said it was enough to refer to sections 6 and 55 of the Hawaiian Organic Act which in substance provided that all laws then in force should continue subject to modification by the Congress or the legislature of Hawaii and that the local legislative power should extend to all subjects of legislation not inconsistent with provisions of the Organic Act. The same provision is made in sections 11 [5] and 25 [6] of the Organic Act of Guam.

Since Guam is not a unique "sovereignty" as the appellant contends, and since we are bound by the superior authority of the Supreme Court on the same question, we have no occasion to discuss the merits of the doctrine of sovereign immunity.[7] We offer no expression of opinion on the following questions: (a) waiver by Guam of its immunity; (b) the right to sue a tax collector as agent of Guam; or (c) the liability at common law of a tax collector as an individual.[8]

The judgment is affirmed.

5. 64 Stat. 387, 48 U.S.C.A. § 1423a.

6. 64 Stat. 390, 48 U.S.C.A. § 1421c.

7. Cf. criticism of the doctrine of Frankfurter, J., dissenting in Great Northern Life Ins. Co. v. Read, 322 U.S. 47 at page 59, 64 S.Ct. 873, 88 L.Ed. 1121.

8. Cf. Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 51, 53, 64 S.Ct. 873, 88 L.Ed. 1121.