866 F.2d 294
 1989 A.M.C. 896
 Robert MARX, Plaintiff-Appellee,
v.
GOVERNMENT OF GUAM, Claimant-Appellant,
and
Two Wrecked and Abandoned Vessels, (believed to be the
NUESTRA SENORA DEL PILAR and NUESTRA SENORA DEL
BUEN VIAJE), etc.; in rem, Defendant-Appellant.
 No. 87-2713.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 15, 1988.
Decided Jan. 24, 1989.
 
 R. Happy Rons, Asst. Atty. Gen., Government of Guam, Agana, Guam, for defendant-appellant.
 Richard L. Johnson, Kelmm, Blair, Sterling & Johnson, Agana, Guam, for plaintiff-appellee.
 Appeal from the United States District Court for the District of Guam.
 Before WISDOM,* BOOCHEVER and THOMPSON, Circuit Judges.
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 * INTRODUCTION
 
 
 2
 This in rem admiralty case concerns two Spanish galleons thought to have sunk off the coast of Guam in the seventeenth and eighteenth centuries. The issues are: (1) whether we have jurisdiction of this appeal under the collateral order doctrine, (2) whether the government of Guam ("Guam") has standing, and (3) whether Guam has sovereign immunity which precludes the exercise of federal jurisdiction over its claims to the wrecks.
 
 II
 FACTS
 
 3
 Appellee Robert Marx ("Marx") and Guam believe the two shipwrecks are the remnants of the Nuestra Senora del Bien Viaje ("Viaje") and the Nuestra Senora del Pilar ("Pilar"). Both wrecks lie within three miles of the coast of Guam. Marx asserts that he is the first finder of the shipwrecks. Guam claims the two wrecks based on its "Protection and Recovery of Underwater Historic Property Act" which protects "underwater historic properties situated under the navigable waters and territorial seas of the territory." Guam Gov't Code Secs. 13985.29-.35 (Supp.1974) ("Underwater Historic Property Act"); see also 48 U.S.C. Sec. 1705 (1982) (generally conveying to Guam title to submerged lands within three miles of its shore).
 
 
 4
 Marx and several others applied for exploration and recovery permits from Guam. Guam issued an exclusive permit on May 5, 1987 to Davey Jones Archeology, Ltd. Marx did not challenge this decision in Guam's territorial court. Instead, he filed the present in rem action in district court on June 10, 1987. A warrant of arrest for the wrecks was issued on June 17, 1987. On July 1, 1987, Guam made a special appearance in the district court for the limited purpose of moving for an order dismissing the action and vacating the warrant of arrest. Guam based its motion on its claim to sovereign immunity. The district court denied the motion. The court also entered a default judgment as to the Viaje because no one had filed a claim to that wreck under Supplemental Admiralty Rule C(6). Fed.R.Civ.P. C(6). Guam appeals from the denial of its motion to dismiss.[1]
 
 III
 APPELLATE JURISDICTION
 
 5
 Normally, a denial of a motion to dismiss is not final for purposes of 28 U.S.C. Sec. 1291. See In re Benny, 791 F.2d 712, 718 (9th Cir.1986). Guam claims that the district court's denial of its motion to dismiss falls within the collateral order doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); see also Nixon v. Fitzgerald, 457 U.S. 731, 742, 102 S.Ct. 2690, 2697, 73 L.Ed.2d 349 (1982). We agree.
 
 
 6
 Denials of immunity claims can qualify for immediate review under Cohen. Mitchell v. Forsyth, 472 U.S. 511, 525-27, 105 S.Ct. 2806, 2814-16, 86 L.Ed.2d 411 (1985) (qualified immunity); Nixon v. Fitzgerald, 457 U.S. 731, 742-43, 102 S.Ct. 2690, 2697-98, 73 L.Ed.2d 349 (1982) (absolute immunity). The Court has explained that: "[T]he denial of a substantial claim of absolute immunity is an order appealable before final judgment, for the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." Mitchell, 472 U.S. at 525, 105 S.Ct. at 2815.
 
 
 7
 Guam claims absolute immunity. It asserts the right to be free from the "crippling interferences" of litigation. See Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 53-54, 64 S.Ct. 873, 876-77, 88 L.Ed. 1121 (1944) (citing numerous cases including Kawananakoa v. Polyblank, 205 U.S. 349, 27 S.Ct. 526, 51 L.Ed. 834 (1907)). Cf. Lojuk v. Johnson, 770 F.2d 619, 621 (7th Cir.1985) (absolute immunity is the right to be "free from suit, regardless of culpability"), cert. denied, 474 U.S. 1067, 106 S.Ct. 822, 88 L.Ed.2d 795 (1986).
 
 
 8
 We conclude that the district court's denial of Guam's sovereign immunity claim is an appealable collateral order under Cohen, Mitchell and Nixon.[2] See also Compania Mexicana de Aviacion, S.A., 859 F.2d 1354, 1356, 1358 (9th Cir.1988) (per curiam) (foreign sovereign immunity). We have jurisdiction to hear this appeal.
 
 IV
 STANDING
 
 9
 Marx argues, and the district court held, that Guam lacked standing to bring its motion to dismiss because Guam failed to file a claim pursuant to Supplemental Admiralty Rule C(6).[3] This rule specifies the procedure "claimants" must use to file a claim in an admiralty in rem action. Fed.R.Civ.P. C(6). By its terms, Rule C(6) only applies to "claimants." In the context of this rule, a "claimant" means a traditional contestant who assumes the position of a defendant in an action. As one commentator explained:
 
 
 10
 A "claimant" in the admiralty practice ... is a person who assumes the position of a defendant and demands the redelivery to himself of the vessel arrested. An "intervenor" ... is one who, without demanding the redelivery of the vessel, seeks only the protection of his interest in her, or the payment of his claim in the ultimate disposition of the case.
 
 
 11
 7A J. Moore & A. Pelaez, Moore's Federal Practice p C.16 (2d ed. 1976); see also United States v. Beechcraft Queen Airplane, 789 F.2d 627, 629-30 (8th Cir.1986).
 
 
 12
 Guam specially appeared and intervened solely to challenge the district court's jurisdiction. We construe Guam's special appearance and motion to dismiss as a motion to intervene for the limited purpose of challenging the court's jurisdiction. See Fed.R.Civ.P. 1, 8(f) (requiring federal courts to construe pleadings so as to do substantial justice). We hold that the motion was proper under Rule 24. Fed.R.Civ.P. 24; see also California v. Tahoe Regional Planning Agency, 792 F.2d 775, 778 (9th Cir.1986); Washington State Building and Construction Trades Council v. Spellman, 684 F.2d 627, 630 (9th Cir.1982) ("Rule 24 traditionally has received a liberal construction in favor of applicants for intervention."), cert. denied, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983).
 
 
 13
 In moving to dismiss, Guam did not assume the position of a normal defendant nor did it seek to adjudicate its claim to the wrecks. Instead, it relied on cases which have permitted governments to assert an immunity defense and move to dismiss without filing C(6) claims. See, e.g., Maritime Underwater Surveys v. Unidentified Vessel, 717 F.2d 6, 7 (1st Cir.1983); Subaqueous Exploration and Archeology, Ltd. v. Unidentified, Wrecked and Abandoned Vessel, 577 F.Supp. 597, 600 (D.Md.1983). This reliance was reasonable. Cf. United States v. An Undetermined Quantity of an Article of Drug Labeled as Benylin Cough Syrup, 583 F.2d 942, 949-50 n. 9 (7th Cir.1978) (allowing intervention under 21 U.S.C. Sec. 334(d) despite failure to file as a C(6) claimant).
 
 
 14
 We conclude that Guam has standing to assert its sovereign immunity claim notwithstanding its failure to file a claim to the wrecks pursuant to Supplemental Admiralty Rule C(6). We next consider Guam's sovereign immunity claim.
 
 V
 SOVEREIGN IMMUNITY
 A.
 
 15
 The Supreme Court and this court have recognized that territorial governments have a form of inherent or common law sovereign immunity. In Crain v. Guam, 195 F.2d 414 (9th Cir.1952), we affirmed the dismissal of a challenge to Guam's income tax system. We based our decision on the sovereign immunity of Guam. Crain relied on Supreme Court authority holding that Hawaii and Puerto Rico have or had inherent sovereign immunity. Id. at 415-17 (applying Kawananakoa v. Polyblank, 205 U.S. 349, 353, 27 S.Ct. 526, 527, 51 L.Ed. 834 (1907) (Hawaii), and Porto Rico v. Rosaly, 227 U.S. 270, 273, 33 S.Ct. 352, 353, 57 L.Ed. 507 (1913) (Puerto Rico)). In our Crain decision, we quoted extensively from Kawananakoa:
 
 
 16
 Some doubts have been expressed as to the source of the immunity of a sovereign power from suit without its own permission, but the answer has been public property since before the days of Hobbes. Leviathan, chap. 26, 2. A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends....
 
 
 17
 As the ground is thus logical and practical, the doctrine is not confined to powers that are sovereign in the full sense of juridical theory, but naturally is extended to those that, in actual administration, originate and change at their will the law of contract and property, from which persons within the jurisdiction derive their rights.
 
 
 18
 Crain, 195 F.2d at 416; see also Rosaly, 227 U.S. at 273-74, 33 S.Ct. at 353. We concluded in Crain that Guam "meets this test." Crain, 195 F.2d at 416.
 
 
 19
 Although the Guam Organic Act does not expressly grant broad immunity, the legislative history of the 1959 amendment to the Act indicates that both Congress and the Executive Branch believed that Guam had inherent sovereign immunity. The 1959 amendment added the provision that:
 
 
 20
 The Government of Guam ... with the consent of the legislature evidenced by enacted law, may be sued upon any contract entered into with respect to, or any tort committed incident to, the exercise by the government of Guam of any of its lawful powers.
 
 
 21
 48 U.S.C. Sec. 1421a (1982). The Senate Report on the amendment suggested that Guam already had sovereign immunity and that the amendment only served to provide a potential limitation of that immunity. S.Rep. No. 969, 86th Cong., 1st Sess. 1, reprinted in 1959 U.S.Code Cong. & Admin.News 2659-60. The Senate's position was consistent with the views of the Interior Department which indicated:
 
 
 22
 The proposed amendment ..., in effect, enables the Legislature of Guam to waive sovereign immunity which was conferred upon the government of Guam by the Congress through enactment of the Guam Organic Act when, in the legislature's opinion, the best interests of both the people and the government of Guam would be served by allowing such an action to be brought.
 
 
 23
 Letter of Roger Ernst, Assistant Secretary of the Interior, to Rep. Wayne N. Aspinall, Chairman, Committee on Interior and Insular Affairs (Mar. 9, 1959), reprinted in 1959 U.S.Cong. & Admin.News 2660.
 
 
 24
 Thus, controlling authority and the legislative history of the Organic Act compel our holding that the government of Guam has inherent sovereign immunity.[4]
 
 B.
 
 25
 Notwithstanding Guam's sovereign immunity, Marx argues that Guam had neither actual possession of, nor a colorable claim to, the shipwrecks, and as a result its motion to dismiss was properly denied.
 
 
 26
 The key Supreme Court case involving the question of dismissal on the ground of sovereign immunity of in rem actions pertaining to shipwreck artifacts is Florida Department of State v. Treasure Salvors, Inc., 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982). In Treasure Salvors, both the plurality (Justices Stevens, Burger, Marshall and Blackmun) and the dissent (Justices White, Powell, Rehnquist and O'Connor) agreed that: the district court could not adjudicate Florida's interest in artifacts from a wrecked vessel without Florida's consent. Id. at 700, 102 S.Ct. at 3322 (plurality); id. at 703 n. * 102 S.Ct. at 3324 n. * (dissent). In Treasure Salvors the artifacts were in the possession of Florida state officials. The plurality viewed the action as one against only the state officials, not the State of Florida, and on that basis determined that there was federal jurisdiction to secure the release of the artifacts; the plurality noted that the state officials had "no colorable basis on which to retain possession of the artifacts." Id. at 682, 102 S.Ct. at 3313.
 
 
 27
 In our case, Guam did not have physical possession of any of the artifacts. Some of the artifacts had been recovered by Marx and deposited with the United States Marshal for the District of Guam, and some remain under Guam's authority on or lodged in the sea bed. Neither the plurality nor the dissent in Treasure Salvors clearly indicated whether the Court would require a state asserting its sovereign immunity in an in rem action to have actual possession of the res. However, the Treasure Salvors dissent indicated that the absence of possession makes the state's assertion of sovereign immunity as a jurisdictional bar more controversial. Treasure Salvors, 458 U.S. at 710 n. 7, 102 S.Ct. at 3327 n. 7 (citing Compania Espanola de Navegacion Maritima v. The Navemar, 303 U.S. 68, 75-76, 58 S.Ct. 432, 435-36, 82 L.Ed. 667 (1938)); see also Cobb Coin Co. v. The Unidentified, Wrecked and Abandoned Sailing Vessel, 549 F.Supp. 540, 550-52 (S.D.Fla.1982) (Cobb Coin II ). In Jupiter Wreck, Inc. v. The Unidentified, Wrecked and Abandoned Sailing Vessel, 691 F.Supp. 1377, 1384 (S.D.Fla.1988), the court concluded that possession was not essential to the application of the Treasure Salvors principles. We agree. See also Maritime Underwater Surveys, Inc. v. The Unidentified, Wrecked and Abandoned Sailing Vessel, 717 F.2d 6, 7-8 (1st Cir.1983); Subaqueous Exploration v. Unidentified, Wrecked and Abandoned Vessel, 577 F.Supp. 597, 607. Actual possession of the res is not a prerequisite in an in rem action to the assertion of a claim to sovereign immunity.[5] We next consider the "colorable claim" question.
 
 
 28
 The Treasure Salvors plurality, albeit by negative implication, implied that if state officials had a "colorable basis on which to retain possession" of shipwrecked artifacts, a federal court would not have jurisdiction to resolve competing claims to the artifacts. Treasure Salvors, 458 U.S. at 682, 102 S.Ct. at 3313. The dissent would have barred the suit because the state itself purported to own the treasure and the very nature of the suit was to determine title to the property. Id. at 702, 102 S.Ct. at 3323. Perhaps the dissent would not require the claim to be colorable. Certainly, the dissent's analysis of the colorability of the state's claim to the treasure was far more lenient than that of the plurality. Compare id. at 694, 102 S.Ct. at 3319 (plurality) with id. at 712, 102 S.Ct. at 3328 (dissent). We assume that a colorable claim is required. We hold that such a claim will suffice. Therefore, if Guam has a colorable claim to the two shipwrecks, and has not consented to federal jurisdiction, the district court lacked jurisdiction to resolve the parties' claims to the wrecks and the case should be dismissed. See Subaqueous, 577 F.Supp. at 607; see also Maritime Underwater Surveys, 717 F.2d at 8.[6] But see Riebe v. Unidentified, Wrecked and Abandoned 18th Century Shipwreck, 691 F.Supp. 923, 924 (E.D.N.C.1987).
 
 C.
 
 29
 Congress has granted Guam title and control over the submerged lands off Guam's coast. 48 U.S.C. Sec. 1705 (1982). Congress modeled section 1705 after a similar statute giving coastal states control over lands within three miles of shore. 43 U.S.C. Sec. 1311 (1982). Section 1311 is part of the Submerged Lands Act. Since this action was commenced, Congress enacted the Abandoned Shipwreck Act of 1987. Pub.L. 100-298, 102 Stat. 432 (1988). The 1987 Act granted the states and territories title to all shipwrecks embedded in the submerged lands of the state or territory. It also granted title to shipwrecks lying on those lands if they are deemed eligible for inclusion in the National Register of Historic Places. However, the Act specifically exempts legal proceedings brought prior to its enactment making its provisions inapplicable to the instant case.
 
 
 30
 Marx contends that the adoption of the 1987 Act demonstrates that the previously enacted 48 U.S.C. Sec. 1705 did not convey to Guam title to shipwrecks on submerged lands. He argues that there would have been no need for the 1987 Act if section 1705 and the Submerged Lands Act had previously conveyed title and control to shipwrecks. We disagree. The legislative history of the 1987 Act indicates that Congress merely wanted to clarify the effect of the Submerged Lands Act and did not intend to express an opinion about preexisting law. H.Rep. No. 100-514(II), 100th Cong., 2d Sess. 2-3, reprinted in 1988 U.S.Cong. & Admin.News pp. 370, 371. More importantly, the plain language of section 1705 conveys to Guam broad title and control over its submerged lands.
 
 
 31
 Marx cites Treasure Salvors, Inc. v. The Unidentified Wrecked and Abandoned Sailing Vessel, 569 F.2d 330, 339 (5th Cir.1978), as support for the proposition that the Submerged Lands Act does not cover shipwrecks, and, therefore, Guam does not have a colorable claim to the wrecks. This characterization of Abandoned SailingVessel is inaccurate. The case involved interpretation of the United States' rights under the Continental Shelf Act rather than interpretation of the Submerged Lands Act. 569 F.2d at 339-40. Marx also cites the Cobb Coin cases. Cobb Coin Co. v. The Unidentified, Wrecked and Abandoned Sailing Vessel, 525 F.Supp. 186, 189-90 (S.D.Fla.1981) (Cobb Coin I ) and Cobb Coin Co. v. The Unidentified, Wrecked and Abandoned Sailing Vessel, 549 F.Supp. 540, 555 n. 14 (S.D.Fla.1982) (Cobb Coin II ).
 
 
 32
 In the Cobb Coin cases, Judge King made a frontal attack on the State of Florida's attempt to control the exploration and recovery of historical shipwrecks off the state's coast.[7] The most striking part of the Cobb Coin decisions is Judge King's conclusion that the Florida Act was invalid.[8] 8] One of Judge King's colleagues in the Southern District of Florida, however, has rejected the Cobb Coin cases. Jupiter Wreck, 691 F.Supp. at 1389. And other courts which have considered the question have ruled that similar submerged lands acts do give states at least a colorable claim to wrecks within their boundaries. See, e.g., Maritime Underwater Surveys, 717 F.2d 6, 7-8; Subaqueous, 577 F.Supp. 597.
 
 
 33
 The First Circuit in Maritime Underwater Surveys held that Massachusetts had a colorable claim sufficient to deny the district court jurisdiction over a shipwreck one-quarter mile off its shore where its claim was based upon a Massachusetts statute asserting title over underwater archeological resources, and upon 43 U.S.C. Sec. 1311 of the Submerged Lands Act. The court indicated that Massachusetts' claim to the shipwreck was "at least colorable." Maritime Underwater Surveys, 717 F.2d at 7-8. The Maritime Underwater Surveys case is directly on point. Guam's Underwater Historic Property Act is similar to the Massachusetts statute in Maritime Underwater Surveys. See Guam Gov't Code Secs. 13985.29-.35 (Supp.1974). And the federal statute applicable to Guam, 48 U.S.C. Sec. 1705, is modeled after section 1311 of the Submerged Lands Act. See also Subaqueous, 577 F.Supp. 597, 608 (district court in Maryland held that state had a colorable claim of title to vessel shipwrecked off its shore; claim based on state statute and "the Submerged Lands Act of 1953, 43 U.S.C. Sec. 1301 et seq."). Cf. Riebe, 691 F.Supp. at 924.[9] We hold that Guam has at least a colorable claim to the shipwrecks.
 
 D.
 
 34
 Marx argues that Guam waived its sovereign immunity by affirmatively seeking relief in the district court. He relies upon two circumstances. First, Guam presented an affidavit supporting its motion to dismiss which Marx claims contained matters outside the scope of the pleadings. Second, in its memorandum supporting its motion to dismiss, Guam made a request that the United States Marshal release to Guam the artifacts in his custody.
 
 
 35
 A sovereign may waive its immunity by unequivocally expressing its consent to a court's jurisdiction. See Actmedia, Inc. v. Stroh, 830 F.2d 957, 963 (9th Cir.1986) (eleventh amendment). In the present case, Guam did not waive its sovereign immunity. It asserted its sovereign immunity in its motion to dismiss, and it carefully restricted the scope of its appearance. Under these circumstances, Guam's sovereign immunity was not waived, notwithstanding its request that the Marshal turn over to it the artifacts he was holding. See Actmedia, 830 F.2d at 963; see also Subaqueous, 577 F.Supp. at 614.
 
 VI
 CONCLUSION
 
 36
 Guam had standing to bring its motion to dismiss in the district court. Guam has sovereign immunity. Its motion to dismiss should have been granted; it had a colorable claim to the shipwrecks. The district court lacked jurisdiction to enter the default judgment as to the Viaje. Similarly, the court lacked the power to proceed to trial and judgment as to the Pilar. Both judgments should be vacated, and the entire case should be dismissed for lack of jurisdiction. Accordingly, the district court's judgments are reversed, its order denying Guam's motion to dismiss is reversed, and this case is remanded to the district court with instructions to vacate the judgments and to dismiss the entire case for lack of jurisdiction.
 
 
 37
 REVERSED AND REMANDED.
 
 
 
 *
 The Honorable John Minor Wisdom, Senior Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 After the filing of this appeal, the district court proceeded to trial on the merits of Marx's claim to the Pilar. On November 17, 1988, the district court entered judgment in favor of Marx confirming his title to the Pilar against all the world. We reverse both the Viaje and Pilar judgments
 
 
 [2]
 This conclusion is generally consistent with the law of other circuits. A majority of circuit courts considering the question have applied Cohen to immunity claims based on the eleventh amendment or sovereign immunity. See, e.g., Minotti v. Lensink, 798 F.2d 607, 608 (2d Cir.1986) (eleventh amendment immunity), cert. denied, 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987); Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 450-51 (6th Cir.1988) (foreign sovereign immunity); Foremost Guaranty Corp. v. Community Savings & Loan, Inc., 826 F.2d 1383, 1386 (4th Cir.1987) (eleventh amendment); Segni v. Commercial Office of Spain, 816 F.2d 344, 347 (7th Cir.1987) (foreign agency). But see Libby v. Marshall, 833 F.2d 402, 405 (1st Cir.1987) (disagreeing with Minotti )
 
 
 [3]
 Supplemental Admiralty Rule C(6) provides:
 (6) Claim and Answer; Interrogatories. The claimant of property that is the subject of an action in rem shall file a claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve an answer within 20 days after the filing of the claim. The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action. If the claim is made on behalf of the person entitled to possession by an agent, bailee, or attorney, it shall state that the agent, bailee, or attorney is duly authorized to make the claim. At the time of answering the claimant shall also serve answers to any interrogatories served with the complaint. In actions in rem interrogatories may be so served without leave of court.
 
 
 [4]
 Ngiraingas v. Sanchez, 858 F.2d 1368 (9th Cir.1988), is not contrary. Indeed, in Ngiraingas we specifically reserved the question of sovereign immunity. Id. at 1372 n. 2. And Fleming v. Department of Public Safety, 837 F.2d 401 (9th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 222, 102 L.Ed.2d 212 (1988), is distinguishable. First, as in Ngiraingas, we reserved the question of sovereign immunity. Fleming, 837 F.2d at 407. Second, our conclusion that the Commonwealth of the Northern Mariana Islands ("the Commonwealth") impliedly waived whatever immunity it might have rested on our interpretation of the covenant governing the relationship between the Commonwealth and the federal government. Id. at 407-08. The covenant differs significantly from Guam's Organic Act, and Fleming offers little insight into the relationship between Guam and the federal government. Ngiraingas, 858 F.2d at 1371 n. 1
 Since we hold that Guam has inherent sovereign immunity, we do not reach the question whether Guam has any other kind of immunity sufficient to defeat the district court's jurisdiction. Cf. Sakamoto v. Duty Free Shoppers, Ltd., 764 F.2d 1285, 1289 (9th Cir.1985) (holding that the government of Guam has federal antitrust immunity), cert. denied, 475 U.S. 1081, 106 S.Ct. 1457, 89 L.Ed.2d 715 (1986).
 
 
 [5]
 Compania Espanola v. Navemar, 303 U.S. 68, 58 S.Ct. 432, 82 L.Ed. 667 (1938), is not to the contrary. In Navemar, the sovereign, Spain, apparently did not have colorable title to the ship. 303 U.S. at 73, 58 S.Ct. at 434. We do not read Navemar as making possession an independent requirement. Furthermore, Navemar involved an active sailing vessel rather than a lifeless, centuries old wreck. Obviously, possession is more relevant when the ship's crew can sail away then when its primary value may be found in having it left alone, preserved for posterity. See Klein v. The Unidentified, Wrecked and Abandoned Sailing Vessel, 758 F.2d 1511, 1515 (11th Cir.1985) (government owner of sunken ship might prefer to leave wreck intact underwater)
 
 
 [6]
 The First Circuit in Maritime Underwater Surveys stated it had no doubt the state's claim was "at least colorable," but the court did not reach that issue because the claim involved the State of Massachusetts, not a named state official as in Treasure Salvors, and "because of the Eleventh Amendment's flat prohibition of suits against states regardless of their merit." Maritime Underwater Surveys, 717 F.2d at 8
 
 
 [7]
 The court also discussed the eleventh amendment issue. However, the persuasive value of this discussion is limited. In the case of Cobb Coin I, the decision was rendered prior to Florida Department of State v. Treasure Salvors, Inc., 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982). Furthermore, the state had sought affirmative injunctive relief. 525 F.Supp. at 192, 196. In Cobb Coin II, Judge King determined that Florida, by seeking affirmative relief, had consented to the district court's jurisdiction. 549 F.Supp. at 544, 555 n. 15. This finding of waiver made discussion of the eleventh amendment issue unnecessary. See Maritime Underwater Surveys, 717 F.2d at 8
 
 
 [8]
 In Treasure Salvors, the full Supreme Court did not consider the validity of the Florida statute. However, Justice White stated that the Florida statute was "indisputably valid." 458 U.S. at 716, 102 S.Ct. at 3330 (White, J., dissenting)
 
 
 [9]
 Marx contends that federal law preempts Guam's Underwater Historic Property Act. We disagree. See Florida, 458 U.S. at 716, 102 S.Ct. at 3330 (White, J. dissenting) (similar Florida statute is "indisputably valid"); Jupiter Wreck, 691 F.Supp. at 1388-89; Subaqueous, 577 F.Supp. at 610. But see Cobb Coin I, 525 F.Supp. at 213