**DEEP SEA RESEARCH, INC.,**
**Plaintiff–Appellee,**

v.

**The BROTHER JONATHAN, her Appurtenances, furniture, cargo, etc., Defendant,**

and

**State of California; State Lands Commission, Defendants–Intervenors–Appellants,**

**United States of America, Defendant–Intervenor.**

**No. 95–15693.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 1996.

Decided July 17, 1996.

As Amended on Denial of Rehearing and Rehearing En Banc Dec. 4, 1996.*

* Judges Schroeder and Kozinski voted to reject the suggestion for rehearing en banc, and Judge D.W. Nelson so recommended.

Joseph Rusconi, Linus Masouredis, Deputy Attorneys General, Oakland, California, for defendant-intervenor-appellant State of California.

Peter Pelkofer, California State Lands Commission, Sacramento, California, for defendant-intervenor-appellant California State Lands Commission.

Fletcher Alford, Gordon & Rees, San Francisco, California, for plaintiff-appellee.

Barbara B. O'Malley, United States Department of Justice, Washington, D.C., for defendant-intervenor United States of America.

Before: SCHROEDER, D.W. NELSON and KOZINSKI, Circuit Judges.

D.W. NELSON, Circuit Judge:

Appellee Deep Sea Research ("DSR") brought this *in rem* admiralty action seeking salvage rights and title to the wreck of the *Brother Jonathan,* a double paddle wheel steamer that sank in 1865 off the coast of Crescent City, California. After nineteen years of searching, DSR claims to have discovered the *Brother Jonathan* and has stipulated for the purposes of these proceedings that it is located upon submerged lands of the State of California. The State of California intervened for the limited purpose of asserting that it has a colorable claim of ownership to the wreck and that as a result, the district court is barred by the Eleventh Amendment from adjudicating DSR's claim.

The State argues that it has a colorable claim to ownership under the Abandoned Shipwreck Act of 1987 ("ASA"), 43 U.S.C. §§ 2101–2106, the Submerged Lands Act ("SLA"), Chs. 65, 67 Stat. 29 (1953) (codified in relevant parts at 43 U.S.C. §§ 1311–1315), and Cal.Pub.Res.Code § 6313. After an evidentiary hearing, the district court held that the State had failed to establish a colorable

claim to ownership and rejected its motion to dismiss the claim. *Deep Sea Research, Inc. v. Brother Jonathan,* 883 F.Supp. 1343, 1363–64 (N.D.Cal.1995). The State appeals.

The United States intervened to defend the constitutionality of the ASA. The Columbus–America Discovery Group [1] has filed an *amicus curiae* brief in which it argues that this circuit should not adopt the rule of the Fourth Circuit, which requires an express renunciation of ownership in order to establish abandonment.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

DSR filed this *in rem* admiralty action in November, 1991, seeking to perfect its title to and salvage rights in the wreck of the *Brother Jonathan.* At the initiative of DSR, the case was dismissed without prejudice in June 1992, and reopened in February 1994, a few months after DSR actually discovered the wreck. DSR had been searching for the wreck of the *Brother Jonathan* for almost twenty years. Until DSR discovered the wreck, neither the State nor anyone else knew its location, and the State had not made any attempt to locate the wreck. DSR asserts title to the wreck as the assignee of the subrogation rights of two insurance companies that paid claims on the cargo of the *Brother Jonathan.* However, according to newspaper accounts published at the time of the disaster (the only records anyone has unearthed), about two thirds of the cargo on board was uninsured. Neither is there any evidence that the ship itself was insured.

The State intervened and moved to dismiss, arguing that the wreck belonged to the State under both the ASA and Cal.Pub.Res. Code § 6313. It asserted that even though the State was not named in the complaint, the suit was, in reality, against the State and therefore barred by the Eleventh Amendment. The State also argued that because the wreck met the requirements of the ASA,

1. The Columbus–America Discovery Group is a multidisciplinary team of scientists, engineers, historians and entrepreneurs devoted to exploring the deep ocean and searching for sunken treasure.

the district court lacked subject matter jurisdiction over DSR's claim.

Under the ASA, the federal government asserts title to certain historic wrecks and transfers it to the states on whose submerged lands the wrecks are found. 43 U.S.C. § 2105. A shipwreck meets the requirements of the ASA if it is 1) abandoned; 2) located on a state's submerged lands; and 3) either embedded in the sea floor or determined eligible for listing in the National Register of Historic Places ("National Register"). *Id.*

In cases involving wrecks that fall under the ASA, the traditional admiralty law of salvage [2] and finds [3] does not apply. 43 U.S.C. § 2106(a). Instead, these wrecks are governed by the provisions of the ASA. As a result, the fate of these vessels may be determined in state or federal court. However, the statute makes clear that the "laws of the United States relating to shipwrecks" shall continue to apply to all other wrecks. Thus, the federal courts retain exclusive admiralty jurisdiction over cases involving wrecks that do not meet the requirements of the ASA. 43 U.S.C. § 2106(b).

Section 6313 of the California Public Resources Code is broader than the ASA, because under that provision California asserts title to *all* abandoned shipwrecks on state-owned submerged lands. Under the SLA, the state owns all submerged lands within three miles of the mean high tide. 43 U.S.C. §§ 1301, 1311.

The district court held two evidentiary hearings on the State's motion to dismiss. The first hearing, in September 1994, was devoted to the issue of whether the *Brother Jonathan* was located on state submerged lands. DSR subsequently stipulated that it was. At the second hearing, the parties addressed the issues of abandonment, embeddedness and the historical significance of the wreck.

The district court denied the State's motion to dismiss, holding that the State had not established a colorable claim to the wreck of the *Brother Jonathan* under the ASA. *Deep Sea Research*, 883 F.Supp. at 1357. The court reasoned, based on *ITSI TV Productions, Inc. v. Agricultural Ass'ns*, 3 F.3d 1289 (9th Cir.1993), that a party asserting sovereign immunity must prove by a preponderance of the evidence that the privilege applies. *Deep Sea Research*, 883 F.Supp. at 1349. The court determined that the State did not establish by a preponderance of the evidence that the wreck of the *Brother Jonathan* was abandoned, embedded or eligible for listing in the National Register. *Id.* at 1357. It further held that the ASA preempts Cal.Pub.Res.Code § 6313 to the extent that § 6313 asserts title to shipwrecks that are beyond the scope of the ASA. Because it held that the ASA did not apply to the *Brother Jonathan*, the court did not reach DSR's challenge to the constitutionality of the ASA.

The State appeals, arguing that it need not demonstrate by a preponderance of the evidence that the wreck of the *Brother Jonathan* meets the requirements of the ASA in order to make a colorable claim of ownership and qualify for Eleventh Amendment immunity. It asserts that under *Marx v. Government of Guam*, 866 F.2d 294 (9th Cir.1989), it has demonstrated all that is necessary to make a colorable claim to the *Brother Jonathan*. It also asserts that the district court erroneously held that the ASA preempts Cal.Pub.Res.Code § 6313. Finally, the State

---

**2.** Under the law of salvage, the salvor of an imperiled vessel is entitled to a liberal salvage award from the *res* of the vessel. Salvage awards are intended to advance the public policy goal of encouraging those who come upon imperiled vessels to take the often costly and dangerous steps necessary to recover property in the absence of a negotiated agreement. *See Columbus–America Discovery Group v. Atlantic Mutual Ins. Co.*, 974 F.2d 450, 459 (4th Cir.1992).

**3.** Under the law of finds, title to property that is abandoned on or beneath the ocean vests in the first finder lawfully and fairly appropriating it and reducing it to possession with the intention of becoming its owner. However, an exception is made where the wreck is embedded in state or privately owned submerged lands, in which case, title vests in the owner of the land. *See Zych v. Unidentified, Wrecked, and Abandoned Vessel, Believed to be the SB "Seabird"*, 811 F.Supp. 1300, 1314 (N.D.Ill.1992), *aff'd* 19 F.3d 1136 (7th Cir.), *cert. denied sub. nom. Zych v. Illinois Historic Preservation Agency*, — U.S. —, 115 S.Ct. 420, 130 L.Ed.2d 335 (1994).

challenges the district court's exclusion of the audio portion of a video tape that suggests that the *Brother Jonathan* is, in fact, embedded in the ocean floor.

## STANDARD OF REVIEW

The district court's determination that the State was required to demonstrate by a preponderance of the evidence that it had a colorable claim to the *Brother Jonathan* in order to qualify for Eleventh Amendment immunity is a legal question, which we review de novo. *Twenty–Three Nineteen Creekside, Inc. v. Commissioner,* 59 F.3d 130, 131 (9th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 1034, 134 L.Ed.2d 111 (1996). Similarly, we review de novo the district court's holding that the ASA preempts Cal. Pub.Res.Code § 6313. *Id.* We review for clear error the district court's factual determination that the *Brother Jonathan* does not meet the requirements of the ASA. Fed. R.Civ.P. 52(a); *Campbell v. Wood,* 18 F.3d 662, 681 (9th Cir.) (en banc), *cert. denied,* — U.S. —, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1994). Finally, the district court's exclusion as hearsay of the audio portion of the video tape that may suggest the *Brother Jonathan* is embedded is reviewed for abuse of discretion. *United States v. Gilbert,* 57 F.3d 709, 711 (9th Cir.1995).

## ANALYSIS

### I. *Preemption of Cal.Pub.Res.Code § 6313 by the ASA*

The State challenges the district court's holding that the ASA preempts Cal.Pub.Res. Code § 6313 insofar as § 6313 asserts title to shipwrecks that are not covered by the ASA. *See Deep Sea Research,* 883 F.Supp. at 1359. This provision grants the state title to all abandoned shipwrecks located on its submerged lands that are more than fifty years old or of special historical significance.[4] According to the State, the district court erroneously construed § 7 of the ASA as explicitly preempting the California provision. Section 7 provides that the Act "shall not change the laws of the United States relating to shipwrecks other than those to which this chapter applies." 43 U.S.C. § 2106(b). The State argues that because state law is incorporated into federal maritime law, § 7 of the ASA does not preempt Cal.Pub.Res.Code § 6313. The State's argument is incorrect.

Federal law can preempt a state statute either by explicit language in the statute or when the intent of Congress to preempt state action is "implicit from a pervasive scheme of federal regulation that leaves no room for state and local supplementation." *Barber v. State of Hawaii,* 42 F.3d 1185, 1189 (9th Cir.1994). Federal law also may preempt state law when there is an actual conflict between state and federal law. *Id.* Section 7 of the ASA makes clear that Congress intended to transfer title to the states only for shipwrecks that meet the requirements of the ASA. All other shipwrecks continue to be subject to the exclusive admiralty jurisdiction of the federal courts, as provided by Article III, section 2 of the United States Constitution. Cal.Pub. Res.Code § 6313 takes title to shipwrecks that do not meet the requirements of the ASA and which are therefore within the exclusive admiralty jurisdiction of the federal courts. Thus, the district court correctly held that § 6313 is preempted to the extent that it gives the State title to shipwrecks that do not meet the requirements of the ASA.

### II. *The State's Entitlement to Eleventh Amendment Immunity*

The State argues on appeal that the district court erred in holding that the State did

---

4. Cal.Pub.Res.Code § 6313 provides in relevant part:

   (a) The title to all abandoned shipwrecks and all archeological sites and historic resources on or in the tide and submerged lands of California is vested in the state.

   (b) As used in this section, "submerged archeological site" and "submerged historic resource," shall be given the broadest possible meaning, to include ·any submerged object, structure ... or vessel and any associated car-

go, armament, tackle, fixture, human remains, or remnant thereof, ... which is historically or archeologically significant....

   (c) Sites with archeological or historical significance shall be determined by reference to their eligibility for inclusion in the National Register of Historic Places. Any submerged archeological site·or submerged historic resource remaining in state waters for more than 50 years shall be presumed to be archeologically or historically significant.

not have a colorable claim to the *Brother Jonathan* and therefore was not entitled to immunity under the Eleventh Amendment. First, the State contends, the district court should not have required it to demonstrate by a preponderance of the evidence that it met the criteria of the ASA in order to make a colorable claim to the *Brother Jonathan.* Rather, it argues, this case is governed by *Marx v. Government of Guam*, 866 F.2d 294 (9th Cir.1989). In that case, the 9th Circuit held that the government of Guam had made a colorable claim to an abandoned shipwreck by demonstrating that the shipwreck in question was on state submerged lands and that one of Guam's statutes asserted ownership to shipwrecks located on state submerged lands. 866 F.2d at 300–301. According to the State, in order to make a colorable claim in this case, it need only assert that the *Brother Jonathan* is on its submerged lands and that Cal.Pub.Res.Code § 6313 vests title in the State to abandoned shipwrecks on its submerged lands.

The State also challenges the district court's holding that the *Brother Jonathan* was not abandoned or embedded, arguing that it has a colorable claim to the shipwreck under the ASA as well. In addition to arguing that the State presented adequate evidence of both abandonment and embeddedness, the State contends that the district court applied the wrong test with respect to abandonment. The State argues that the district court erroneously required that abandonment be shown by an affirmative act on the part of the original owner demonstrating intent to renounce ownership.

### A. *Requirements for Making a Colorable Claim to the Brother Jonathan*

The State argues that the Eleventh Amendment limits the showing required to make a colorable claim to ownership of an abandoned shipwreck. It reasons that "[i]f a state has to prove the merits of its ownership claim in order to establish its Eleventh Amendment immunity, then it has no Eleventh Amendment immunity." Thus, in cases involving a state's assertion of ownership of wrecks on its submerged lands, the State asserts, it is inappropriate to adopt the rule

of *ITSI TV*, which requires that the State demonstrate by a preponderance of the evidence that it is entitled to immunity. 3 F.3d 1289, 1292 (9th Cir.1993). Rather, citing *Marx v. Government of Guam*, the State asserts that it should be required to demonstrate only that the shipwreck is on state submerged lands and that there is a state statute giving it title to shipwrecks on its submerged lands. The State's argument is without merit.

In *Marx v. Government of Guam*, Guam claimed two shipwrecks located on its submerged lands and argued that sovereign immunity precluded the exercise of federal jurisdiction over the wrecks in an *in rem* admiralty action. 866 F.2d at 295. The court expressly did not base its decision on the ASA because that case was initiated prior to that statute's adoption and the Act specifically exempts such proceedings. *Id.* at 300; *see* 43 U.S.C. § 2106(c). Rather, its decision was based on Guam's Underwater Historic Property Act, which conveyed to Guam broad title and control over property located on its submerged lands. *Id.* at 300–301. The court rejected the argument that adoption of the ASA indicated that the previously enacted Guam statute was invalid, finding that in adopting the ASA Congress "merely wanted to clarify the effect of the Submerged Lands Act and did not intend to express an opinion about preexisting law." *Id.* On the basis of the Guam statute and the Submerged Lands Act, 43 U.S.C. § 1311, the court found that Guam had a "colorable claim" to the wrecks and dismissed the case on the basis of Guam's sovereign immunity.

The State of California asserts that the facts in this case are virtually identical to those in *Marx v. Government of Guam* because the *Brother Jonathan* is located on California's submerged lands and Cal.Pub. Res.Code § 6313 asserts title to abandoned shipwrecks on state submerged lands. Thus, it argues, it has made an adequate showing to establish a colorable claim to the *Brother Jonathan* and this case should be dismissed on the basis of sovereign immunity.

However, the State's argument fails to take into account the impact of the adoption

of the ASA on the requirements for making a colorable claim to a wreck. In adopting the ASA, Congress preempted state laws which purported to take title to all shipwrecks on their submerged lands, at least to the extent that such laws took title to shipwrecks that did not meet the requirements of the ASA. Thus, while the Government of Guam was able to make a colorable claim under its broad statute, it follows that a more extensive showing is required in this case, in which the ASA applies, to make a colorable claim to the *Brother Jonathan.*

■ Furthermore, a federal court has both the power and duty to determine whether a case falls within its subject matter jurisdiction. *See United States v. United Mine Workers of America,* 330 U.S. 258, 291, 67 S.Ct. 677, 694–95, 91 L.Ed. 884 (1947); *see also Seabird,* 811 F.Supp. at 1312 fn. 9 ("Presumably, the ASA does not affect the federal court's jurisdiction to resolve questions relating to its jurisdiction."). Therefore, it was appropriate for the district court to require the State to present evidence that the ASA applied to the *Brother Jonathan, i.e.,* that it was abandoned and either embedded or eligible for listing in the National Register, before dismissing the case. Otherwise, as DSR points out, the State could receive immunity simply by asserting that it was entitled to it. For a federal court to renounce jurisdiction over an admiralty case on the basis of a mere assertion of entitlement to immunity on the part of the State is inconsistent with the court's duty to assess whether it has jurisdiction.

The State also argues that the district court erroneously relied on *ITSI TV* in imposing on the State the burden of proving by a preponderance of the evidence that the ASA applies to the *Brother Jonathan.* In *ITSI TV,* this court addressed the question, "who bears the burden of persuasion when a putative state entity claims immunity from suit in federal court under the Eleventh Amendment?" 3 F.3d at 1291. There, a television production company sued California State Fair and Exposition and various district agricultural associations for copyright infringement. *Id.* The defendants moved to dismiss on the ground that they were arms of

the State and therefore were immune from suit under the Eleventh Amendment. *Id.* They further argued that because Eleventh Amendment immunity is a jurisdictional bar, the burden is on the plaintiffs to establish that the defendants are not entitled to such immunity. *Id.*

The court rejected the defendants' argument, holding instead that "Eleventh Amendment immunity, whatever its jurisdictional attributes, should be treated as an affirmative defense," which "must be proved by the party that asserts it and would benefit from its acceptance." *Id.* In reaching this conclusion, the court drew on the law governing the Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C. §§ 1330, 1602–11, and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. Both acts place the burden on the defendant to prove that it is entitled to immunity, and the former explicitly requires that the defendant demonstrate its entitlement to immunity by a preponderance of the evidence. *Id.* at 1292. The court in *ITSI TV* also points out that Eleventh Amendment immunity is most likely to be the subject of dispute when a "complex institutional arrangement makes it unclear whether a given entity ought to be treated as an arm of the State." *Id.* Because the details of these institutional arrangements are "peculiarly within the knowledge of the party claiming immunity," considerations of fairness support placing the burden of proof on the party claiming to be a state entity. *Id.* (internal quotations omitted).

The State argues that this case is distinguishable from *ITSI TV* because it does not concern the defendant's status as a state entity. Rather, to determine whether or not the State was entitled to immunity, the district court in this case evaluated the strength of the State's claim to title of the *Brother Jonathan* under the ASA and Cal.Pub.Res. Code § 6313. As a result, the district court required the State to prove by a preponderance of the evidence that the shipwreck was abandoned and that it was embedded in the ocean floor or eligible for listing in the National Register. The State argues that facts relating to these questions, in contrast to the one at issue in *ITSI,* are not "peculiarly

within the knowledge of the party claiming immunity," but instead, within the knowledge of DSR. Therefore, the State argues, the burden should be on DSR rather than the State to demonstrate that the State does not have a colorable claim to the *Brother Jonathan. Id.*

While the State is correct that the factual question in *ITSI TV* differs from the one at issue in this case, it does not follow that the burden should be on the plaintiff to establish that the State is immune under the Eleventh Amendment. In *ITSI TV*, the court draws analogies to both the FSIA and the FTCA. In doing so, it makes no distinction between cases involving the defendant's status as an agent of the State and cases in which a party's entitlement to immunity turns on other issues. Further, the State of California cites no authority for the proposition that such a distinction should be made. We find that, according to the reasoning of the court in *ITSI TV*, the party asserting immunity has the burden to establish that it is entitled to immunity even if the determination of that issue touches the merits of the claim.

Finally, in addressing the questions of abandonment, embeddedness, and historical significance of the wreck under the ASA, a federal court does not adjudicate the state's rights. The ASA does not vest title to wrecks that satisfy its requirements directly in the state. Rather, it provides that the *federal* government may assert title to such wrecks. *See* 43 U.S.C. § 2105(a). Only after the federal government takes title to the abandoned shipwreck may title then be transferred to the state. 43 U.S.C. § 2105(c). Thus, a federal court may adjudicate the question of whether a wreck meets the requirements of the ASA without implicating the Eleventh Amendment.[5] Therefore, we hold that the district court did not err in requiring the State to prove by a preponderance of the evidence that it was entitled to Eleventh Amendment immunity.

## B. *Validity of District Court's Factual Determination that the Brother Jonathan Was Not Abandoned*

The State challenges the district court's holding that the *Brother Jonathan* is abandoned. It argues that the district court erroneously required the State to demonstrate affirmative intent on the part of the owner to abandon. Instead, the State asserts, the district court should have found that the State made a colorable claim to abandonment because the original owner of the ship is long gone and the wreck has lain undisturbed on the bottom of the ocean for 130 years. Further, the State argues, even if the insurers of the *Brother Jonathan* did not abandon title, at least a portion of the wreck is abandoned because only part of the cargo was insured and the vessel itself was not insured.

### 1. Test for abandonment

The ASA does not define the term "abandonment." Thus, Congress presumably intended that courts apply the definition of abandonment that has evolved under maritime law. Traditionally, maritime law has found abandonment when title to a vessel has been affirmatively renounced, or when circumstances give rise to an inference that the vessel has been abandoned; courts have found abandonment, for instance, when a vessel is "so long lost that time can be presumed to have eroded any realistic claim of original title." *Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked and Abandoned Steam Vessel*, 833 F.2d 1059, 1065 (1st Cir.1987).

The Fourth Circuit in *Columbus–America* reversed the district court's finding that even though a number of insurance companies had paid claims on a wreck in 1857, the insurance companies had abandoned their title to the wreck. *Id.* at 468. The district court inferred abandonment by the insurance companies on the basis of its finding that the

---

**5.** This is not to say that Congress abrogated the Eleventh Amendment immunity of the States by enacting the ASA. The Supreme Court has stated that "the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States." *Seminole Tribe of Florida v. Florida*, — U.S. —, —, 116 S.Ct. 1114, 1131, 134 L.Ed.2d 252 (1996). Here, however, we make a threshold determination of whether the state can assert a claim to the *Brother Jonathan* under the ASA. That decision is properly within the federal court's jurisdiction.

insurance companies had made no efforts to find the wreck and had destroyed any documentation they once had concerning the case. *Columbus–America Discovery Group v. The Unidentified, Wrecked and Abandoned Sailing Vessel,* 742 F.Supp. 1327, 1344–45 (E.D.Va.1990), *rev'd* 974 F.2d 450 (4th Cir.' 1992). In holding that abandonment could only be found on the basis of an express renunciation of ownership, the Fourth Circuit introduced a significant modification into maritime law. *See Columbus–America,* 974 F.2d at 472 (Widener, J., dissenting). The State of California argues that the district court erred by adopting the Fourth Circuit's rule in this case, rather than relying on the traditional approach to abandonment which allows abandonment to be inferred on the basis of circumstantial evidence.

■ Although the district court in this case cites the Fourth Circuit's decision in *Columbus–America,* its holding that the *Brother Jonathan* is not abandoned rests on the traditional rule that a wreck is not abandoned unless either 1) title is affirmatively renounced *or* 2) abandonment can be inferred from the lapse of time or failure to pursue salvage efforts on the part of the owners. The district court states:

> Herbert's testimony [the only testimony offered by the State on the issue of abandonment], by itself, does not provide a sufficient basis for the court to conclude that the owners of the *Brother Jonathan* have taken a 'clear and unmistakable affirmative act to indicate a purpose to repudiate ownership' in the *Brother Jonathan* and its cargo. *In addition, the State has failed to provide sufficient evidence to demonstrate that the Brother Jonathan has been abandoned due to the lapse of time, or because the owners of the vessel have failed to undertake salvage efforts.*

883 F.Supp. at 1352 (emphasis added). Thus, the State's argument that the district court applied the wrong test lacks merit.

■ Further, the district court's failure to infer abandonment from the evidence presented by the State was not clearly erroneous. DSR presented a newspaper article dating from the time of the wreck listing a number of insurance companies that insured the cargo of the *Brother Jonathan.* These insurance companies took title to at least part of the wreck by right of subrogation and under the ASA regulations when they paid claims on the *Brother Jonathan.*[6] DSR also presented evidence of agreements it reached with two of the insurance companies assigning title to the wreck to DSR. Finally, DSR presented undisputed evidence that the technology required to salvage the *Brother Jonathan* has been developed only in the last few years, so that successful salvage efforts would have been impossible until very recently. When the technology to conduct salvage operations has been developed recently, failure on the part of an owner to attempt to salvage the wreck does not give rise to an inference that the owner has abandoned title to the vessel. *See, e.g., Zych v. Unidentified, Wrecked and Abandoned Vessel, Believed to be the SB "Lady Elgin",* 755 F.Supp. 213, 216 (N.D.Ill.1990), *amended* 1991 WL 2536 (1991).

■ In response, the State presented a single witness on the issue of abandonment, who had conducted only twenty-two hours of research in the week before the hearing and did not know whether the insurance companies who paid claims on the *Brother Jonathan* had conducted any salvage efforts. Thus, the State presented the district court with no evidence that the insurance companies intended to abandon the wreck. The district court did not clearly err in finding that the insurance companies did not abandon title.

**2. Partial abandonment**

■ The State argues, however, that even if the insurance companies did not abandon title to the *Brother Jonathan,* they

---

**6.** The ASA guidelines specify that:

When the owner of a sunken vessel is paid the full value of the vessel (such as receiving payment from an insurance underwriter) the shipwreck is not considered to be abandoned. In such cases, title to the wrecked vessel is passed to the party who paid the owner.

Abandoned Shipwreck Act Guidelines, 55 Fed. Reg. 50120 (1990).

held title to only the part of the cargo for which they paid claims. Thus, the State asserts, the portion of the wreck that was uninsured should be considered abandoned, as there is no one before the court claiming ownership of that part of the wreck. In support of its argument, the State points to the ASA Guidelines, which specify that title passes to an insurer when the insurer has paid the *full* value of the vessel to the owner. ASA Guidelines, 55 Fed.Reg. 50120–21 (1990). The district court responded by noting that it is "premature for the court to find that any individual items of cargo or personal property have been abandoned," pointing out that when the discovery of the wreck gains publicity, additional claimants are likely to come forward. *Deep Sea,* 883 F.Supp. at 1354. The court further held that "[t]he State's assertion that any abandoned personal property and uninsured cargo automatically becomes the property of the State is incorrect." *Id.*

The district court, thus, did not address the issue of whether, under the ASA, when claims were paid on only a fraction of a ship's cargo, an inference of abandonment arises with respect to the uninsured vessel and remaining cargo. This is a question of first impression.

The State would have us divide the wreck into the portion on which claims were paid (which would not be considered abandoned) and the portion that was uninsured (which would be considered abandoned). If we were to adopt this approach, we would have to dismiss the action in federal court with respect to the abandoned part of the wreck and retain jurisdiction over the part on which insurance claims were paid.

We decline to divide the wreck of the *Brother Jonathan* into abandoned and unabandoned portions for the purposes of the ASA for two reasons. First, if we were to find that the vessel had been partially abandoned, both the federal court and the state court would be adjudicating the fate of the *Brother Jonathan.* It is unlikely that Congress intended such a confusing and inefficient approach in adopting the ASA.

Second, such an approach is inconsistent with the general rule in maritime law of treating wrecks as a legally unified *res.* In fact, the Fourth Circuit's decision in *Columbus–America* appears to be the only admiralty case in which a wreck has not been treated as a unified whole. 974 F.2d at 465. There, the court held that a number of insurance companies retained title to parts of the wreck and remanded to the district court for a determination of how the wreck would be apportioned among them. *Id.* at 468.

Having concluded that the *Brother Jonathan* should be treated as a unified *res,* the question remains, should the wreck be considered abandoned (because the vessel and much of its cargo were not insured) or should the vessel be considered not to have been abandoned (because part of the cargo was insured)? Because the law is reluctant to find abandonment, *see, e.g., Lady Elgin,* 755 F.Supp. at 217, and because a finding of partial abandonment would deprive those holding title to the unabandoned portion of the wreck access to the federal forum, we hold that the *Brother Jonathan* was not abandoned. We reserve the question of whether there is some point at which the portion of the wreck that is insured becomes so negligible that the wreck might be considered abandoned for the purposes of the ASA.

III. *Conclusion*

Because we find that the *Brother Jonathan* was not abandoned and that therefore, it does not fall under the ASA, we need not reach the State's argument that the district court erred in finding that the *Brother Jonathan* was not embedded. Even if the district court erroneously excluded the audio portion of a tape that suggested that the *Brother Jonathan* was embedded, the error was harmless. Nor need we address the question of whether we should take judicial notice of evidence that on October 12, 1995, the *Brother Jonathan* was determined eligible for inclusion in the National Register. Finally, because we find that the ASA does not apply, we do not reach the constitutionality of that statute. We therefore hold that the district court properly denied the state's motion to

dismiss on the grounds of Eleventh Amendment immunity.

We AFFIRM.