# VIRGIN ISLANDS PORT AUTHORITY, Plaintiff
## v.
# BALFOUR BEATTY, INC., Defendant

Civil No. 1994/0004

District Court of the Virgin Islands

Div. of St. Croix

July 15, 1994

DON C. MILLS, ESQ., St. Thomas, V.I., *for plaintiff*

MATTHEW J. DUENSING, ESQ., (D'AMOUR, JONES, STRYKER & DUENSING), St. Thomas, V.I., *for defendant*

BROTMAN, *Senior Judge*

## OPINION

Before the Court is the Defendant's objection to the Magistrate Judge's May 2d, 1994 Order remanding the case to the Territorial Court. The objection is properly filed pursuant to Fed. R. Civ. P. 72(a). For the following reasons, the Order of the Magistrate Judge is reversed.

## I. BACKGROUND

The procedural background of the case is as follows. The Virgin Islands Port Authority (hereinafter "VIPA") initiated an action against Balfour Beatty, Inc. (hereinafter "Defendant") in the Territorial Court of the Virgin Islands, seeking declaratory relief and to

vacate an arbitration award entered in favor of Defendant in relation to work performed on the Frederiksted Pier. Defendant subsequently removed the matter to this Court on the basis of diversity pursuant to 28 U.S.C. § 1332.

The propriety of diversity jurisdiction—and thus the validity of Defendant's removal to this Court—is the issue underlying the instant appeal. VIPA contends that it is an alter ego of the Government of the Virgin Islands (hereinafter "GVI") and therefore not a "citizen of a state" for diversity purposes. The Magistrate Judge agreed and thus remanded the case to Territorial Court. This appeal followed.

## II. DISCUSSION

■■ That diversity jurisdiction may not be maintained against an agency or instrumentality that is deemed an "alter ego" of a state is settled law and is undisputed among the parties. Harris v. Pennsylvania Turnpike Commission, 410 F.2d 1332, 1333 n.1 (3d Cir. 1979). In determining whether alter ego status is appropriate, a court must perform the same analysis as is required to determine Eleventh Amendment immunity. Blade v. Kline, 612 F.2d 718, 726 & n.16 (3d Cir. 1979), cert. denied, 447 U.S. 921 (1980).[1]

■ The Third Circuit has established criteria for determining whether an entity is an alter ego of a state, and has condensed these criteria into three categories and a series of sub-categories:

(1) whether, in the event plaintiff prevails, the payment of the judgment would come from the state (this includes three considerations: whether payment will come from the state's treasury, whether the agency has the money to satisfy the judgment, and whether the sovereign has immunized itself from respon-

---

[1] Although the Eleventh Amendment per se does not apply to the Government of the Virgin Islands, see Tonder v. M/V The "Burkholder", 630 F. Supp. 691 (D.V.I. 1986), the standards governing immunity under that amendment are nonetheless relevant to this Court's inquiry, inasmuch as they are determinative of alter ego status. If such status attaches to VIPA, Defendant concedes, the Court is divested of jurisdiction notwithstanding the Eleventh Amendment bar. Such a result can be attributed to other sources of sovereign immunity that attach to territories. See Marx v. Government of Guam, 866 F.2d 294, 297–98 (9th Cir. 1989) (acknowledging inherent sovereign immunity of territories); cf. Davis v. Knud-Hansen Memorial Hospital, 635 F.2d 179 (3d Cir. 1980) (discussing Virgin Islands' sovereign immunity generally).

sibility for the agency's debts); (2) the status of the agency under state law (this includes four factors: how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue and be sued in its own right, and whether it is immune from state taxation); and (3) what degree of autonomy the agency has.

Peters v. Delaware River Port Auth., 16 F.3d 1346, 1350 (3d Cir. 1994) (citing Bolden v. Southeastern Pa. Transp. Auth., 953 F.2d 807, 816 (3d Cir. 1991), cert. denied, 112 S.Ct. 2281 (1992)). Of these three categories, the most important is the first. Peters, 16 F.3d at 1350 (citing Bolden, 953 F.2d at 816); see Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir.) (noting that single most important question is whether judgment would be paid by state treasury), cert. denied, 493 U.S. 850 (1989).

In order to determine whether VIPA is an alter ego of the GVI, the Court now addresses the respective categories in turn. As a reference point, the Court shall rely in significant part on the sections of Virgin Islands Code that govern VIPA, codified at Title 29, Chapter 10 of the Code.

A. *Payment of Potential Judgment*

Whether or not the GVI itself will be required to pay any judgment entered against VIPA is the underlying question in this first inquiry.[2] Each of the three relevant factors listed above indicates that it will not. First of all, any judgment against VIPA will not technically affect funds in the state treasury. Under 29 V.I.C. § 571(c), while VIPA moneys are deposited in qualified depositories for GVI funds, such moneys are kept separate from GVI funds in accounts that are in VIPA's name.

---

[2] That a state may *voluntarily* contribute to a judgment is insufficient to confer immunity on a state agency and thus is irrelevant to the alter ego question. Fitchik, 873 F.2d at 661 (citing, inter alia, Kovats v. Rutgers, the State Univ., 822 F.2d 1303, 1309 (3d Cir. 1987). Furthermore, that a state agency faced with a large judgment against it "might be compelled to rely on increased state subsidies" has expressly been rejected by the Third Circuit as insufficient to accord the agency with alter ego status. Bolden, 953 F.2d at 819; see Fitchik, 873 F.2d at 661 (holding that state's appropriation to agency of funds "to meet any shortfall" does not trigger immunity). Accordingly, the thrust of this first category is whether the Virgin Islands is obligated as a matter of law to contribute to any judgment entered against VIPA.

As to whether VIPA has the funds to satisfy a judgment, which in this case is potentially in the area of several million dollars, the answer is yes and no. On the one hand, VIPA contends that it could not pay such a large sum without using the moneys fronted to it by the GVI for the Frederiksted project. On the other hand, VIPA has the autonomous ability to borrow money and/or issue bonds. 29 V.I.C. § 543. Indeed, counsel for VIPA conceded at oral argument that VIPA could conceivably raise the necessary funds by increasing rates or through some other mechanism. Finally on this issue, that VIPA may feel the need to rely on GVI finds to avoid a shortfall is irrelevant to the Court's inquiry, as discussed above.

As to whether the GVI has immunized itself from VIPA's debts, the answer is yes. Under 29 V.I.C. § 541(e), "obligations" of VIPA and "debts" incurred by VIPA are expressly deemed those of VIPA and not of the GVI. Clearly, such language reflects the intent of the Virgin Islands legislature to separate and thus immunize itself from the agency's debts.

■ Taken together, these factors demonstrate that payment of a judgment entered against VIPA will not come from the GVI unless that body voluntarily makes such a payment. While VIPA may find a multi-million dollar judgment extremely burdensome, it could raise the funds if absolutely necessary. This result weighs strongly in favor of denying alter ego status. See Fitchik, 873 F.2d at 661.

B. *Status of VIPA Under GVI Law*

In regard to the first factor under this category—how GVI law treats VIPA generally—the Court notes several factors. On one hand, VIPA is considered a "public employer" for purposes of labor relations. 24 V.I.C. § 362. On the other hand, VIPA is considered by the Virgin Islands' courts to be outside the scope of the Tort Claims Act, which applies to the GVI. See Cintron v. Virgin Islands Port Authority, 18 V.I. 105, 106 (Terr. Ct. 1981) (holding "plain meaning" of relevant GVI code provisions dictates that VIPA is separate and distinct from GVI). Additionally, the Virgin Islands legislature explicitly denied VIPA the power of eminent domain as a mechanism of acquiring property. 29 V.I.C. § 543(6).

■ In regard to the other relevant factors, VIPA retains "perpetual existence as a corporation," id. § 543(1), can "sue and be sued in its corporate name," id. § 543(4), but is immune from GVI taxation.

Id. § 556. Here the factors somewhat balance out, but the corporate autonomy, eminent domain restriction, and Tort Claims Act inapplicability at least slightly push VIPA's treatment under state law toward the end of the spectrum disfavoring alter ego status.

C. *Autonomy*

Numerous factors appear relevant to the Court's final inquiry. The following factors weigh in favor of alter ego status: Most importantly, VIPA's Board of Governors is entirely comprised of GVI officials or individuals appointed by the Governor and Legislature, which individuals can be removed for cause by the Governor. Id. § 541. In addition, GVI approval is required for sales of property, id. § 543(6), condemnation of property, id. § 543(7), and for selecting securities for investment. Id. §§ 543(11), 571(b).

Yet VIPA possesses significant autonomous powers, including: to make and modify its bylaws, id. § 543(3), to sue in its corporate name, id. § 543(4), to make and execute contracts, id. § 543(5), to acquire property, id. § 543(6), to borrow money and issue bonds, id. § 543(8), and to determine its rates, id. § 543(12).

■    As with the second category above, the balance here is fairly even. On the whole, however, the GVI's ability to control who sits on the Board seems to weigh slightly in favor of according alter ego status.

D. *Weighing of Criteria*

As is evidenced from the above discussion, the first and second categories weigh against alter ego status, and the third in favor. Given this balance, and inasmuch as the first category is the most important, see supra, the Court finds that VIPA is not an alter ego of the GVI.

This decision is quite consistent with the recent case law. Indeed, the decision in many ways parallels that of the Third Circuit in Peters. In that case, the court held that the Delaware River Port Authority was not an alter ego of either New Jersey or Pennsylvania. Like VIPA, the DRPA possesses the following characteristics: its debts are separate from the state pursuant to state statute; it has the ability to raise funds through bond issuance; it has the autonomy to enter contracts; it is outside the scope of the Tort Claims Act, it is exempt from state taxation; and its governing board is wholly comprised of state appointees. 16 F.3d at 1350–52; see also

Bolden, 953 F.2d at 818–21. In ruling that VIPA is not an alter ego of the GVI, this Court thus simply adheres to the precedents established in recent Third Circuit opinions.

## III. CONCLUSION

For the forgoing reasons, the Court finds that VIPA is not the alter ego of the GVI. The Order of the Magistrate Judge is thus reversed and diversity jurisdiction is retained in this Court.

## ORDER REVERSING MAGISTRATE JUDGE'S ORDER TO REMAND

This matter having arisen on Defendant's objection to the Magistrate Judge's May 2d, 1994 Order remanding the case to the Territorial Court, filed with this Court pursuant to Fed. R. Civ. P. 72(a); and

The Court having reviewed the submissions of the parties and having considered the arguments advanced at the July 1st, 1994 hearing; and

For the reasons provided in the Court's Opinion of this date;

IT IS on this 15th day of July, 1994, HEREBY ORDERED

that the Order of the Magistrate Judge is REVERSED. Accordingly, the matter shall remain in this Court.